### No. 6474.

### PIERRE LANNES VS. WORKINGMEN'S BANK ET AL.

The purchaser of property, sold for taxes in accordance with the provisions of law, holds, *prima facie*, after the delay for redeeming has expired, a valid title; and such title can not be disregarded, or assailed collaterally, like a simulated title, but must be attacked in a direct action to annul.

APPEAL from the Superior District Court, parish of Orleans. *Lynch,* J.

*H. E. Upton* and *R. King Cutler,* for plaintiff and appellee.

*Hornor & Benedict* and *F. W. Baker,* for defendants.

The opinion of the court was delivered by

DEBLANC, J. On the twenty-fourth of January, 1876, defendant filed, in the Superior District Court, a petition in which it alleges that Blaize Lannes is indebted unto it in the sum of two thousand dollars, with

interest thereon at the rate of eight per cent from the tenth of October, 1873, the payment of which is secured by the vendor's mortgage and privilege on two lots of ground, Nos. 5 and 6, of square No. 4, situated in the Sixth District of the city of New Orleans, bounded by Levee, Jersey, Milan, and Marengo streets.

The amount sued upon is represented by four notes, of each five hundred dollars, bearing interest at the rate and from the date aforesaid, drawn by Blaize Lannes to his own order and by him indorsed, payable respectively at one, two, three, and four years from the tenth of October, 1873, and now held by said bank.

In its petition of the twenty-fourth of January, 1876, defendant prayed for the seizure and sale of the two lots subject to said vendor's mortgage and privilege, to satisfy, in principal and interest, the four notes hereinbefore mentioned, and, besides, five per cent attorney's fees, three dollars and a half for a copy, and one dollar for a certificate, and the costs of suit. On the twenty-fourth of January, 1876, the order then prayed for was granted.

The notes held by defendant were delivered by Blaize Lannes to his brother Martin, a part of the price of a sale from Martin to Blaize of lots Nos. 5 and 6, in square No. 4. In said act of sale it is expressly stipulated that the vendor's mortgage and privilege is retained in favor of any future holder of the notes subscribed for said price, and that Blaize, the purchaser, would not sell, alienate, or encumber the property to the detriment of said act.

On the thirty-first of January, 1876, acting under the writ of seizure and sale granted on the twenty-fourth of that month, the sheriff of the parish of Orleans seized and advertised for sale the mortgaged property. On the first of March, 1876, the plaintiff, Pierre Lannes, a brother of Blaize and Martin, enjoined the bank and E. Waggaman, then sheriff of the parish of Orleans, from selling said property, on the ground that he owns and possesses the same, by virtue of two valid and recorded deeds, one from the tax collector of the Sixth District of the city of New Orleans, the other from the State of Louisiana.

In answer to plaintiff's injunction, the bank, after a general denial, specially denies the validity of the title acquired from the State Collector, and confirmed by the Auditor. It alleges that said sale is null and void, not only on account of the want of authority in the collector to make or give such a title, but also because said property did not belong, when sold by that officer, to the person in whose name it was assessed.

In addition to these averments, the bank charges that none of the formalities prescribed by law for the validity of a tax sale were complied with, and that the sale from the tax collector to Pierre Lannes was

8

effected by collusion and fraud between said Pierre and his brother Blaize for the purpose of defeating the mortgage and privilege resting on said property.

The bank prays that the tax collector's sale be annulled, plaintiff's injunction dissolved, and he and the surety on his bond condemned *in solido* to pay twenty per cent on the amount of the execution enjoined, and, as special damages, the sum of five hundred dollars.

On the trial, plaintiff offered in evidence, first, the tax deed from the collector to him, executed on the fourth and recorded on the twelfth of August, 1875; second, the sale to him from the State of Louisiana, passed on the fourteenth and recorded on the fifteenth of February, 1876.

The deed from the collector recites that said property was seized and sold to satisfy the taxes thereon due for the year 1873, and adjudicated to Pierre Lannes for $110, on condition that it could be redeemed within six months from the day on which it was sold, by the owner, or any creditor of the owner. The deed from the Auditor is the confirmation and ratification, in the name of the State of Louisiana, of the title transferred by the collector.

Defendant offered in evidence in its proceedings against Blaize Lannes the order and writ of seizure and sale, the return of the sheriff thereon, the notes delivered by said Blaize, and a copy of the act of sale from his brother to him. That act contains the clause which, by tradition, we have been accustomed to consider as the pact *de non alienando.*

The bank also attempted to sustain the averments in its answer by extracts, documents, the testimony of the Lanneses and other witnesses; but plaintiff's counsel objected to the introduction of that evidence, on the ground that, in this controversy, it was irrelevant and inadmissible; that plaintiff owns and possesses under a title derived from the State, and the validity of his title can be inquired into but by a direct action.

The objections raised were maintained by the court, plaintiff's injunction perpetuated, and defendant's right to a direct action specially reserved.

From that decree the bank has appealed.

Had we found, in defendant's pleadings, the charge that the mortgaged lots, though bought by Pierre Lannes, were bought for Blaize, and paid for with funds advanced by him; that the adjudication to Pierre was intended and concocted, not to displace or change the title, but to defeat the mortgage, and that, as between the two brothers, the transaction was and remains a simulation, we would not have hesitated to open the door to the rejected evidence, and assist the creditor in ferreting out any alleged simulation.

Lannes vs. Workingmen's Bank.

The taxes of 1873 were due by Blaize. The payment of these taxes was secured by a right bearing on the mortgaged property, a right superior in rank to any mortgage and privilege. To satisfy that right and those taxes, the property was seized, advertised for sale, adjudicated to plaintiff. He paid the price of adjudication; he paid that price to a State officer; that officer gave him a title to the property; that title was confirmed by the Auditor. That is not disputed. The deeds of sale from the collector and the State are before us, and the constitution and the law command that such deeds shall be recorded, held, and recognized as *prima facie* evidence of a valid title.

We are in presence of an act which may be fraudulent, which may be annulled, but which can not be treated as an absolute nullity. With one exception, the authorities relied upon by defendant's counsel refer—not to any contract or transaction which, though fraudulent, is not without consideration—but to those contracts which have no existence, and which are mere masks used by dishonest debtors to conceal their fraud. In this case there was a consideration, a price was paid, and if any fraud was planned and perpetrated, it was not between the vendor and the vendee, but between the vendee and the former owner.

The only apparent exception to the general rule, that no relative nullities can be inquired into collaterally, that no actual sales can be annulled but in a direct action and contradictorily with all the parties, is that made in the case of Dupré vs. Thompson, reported in the twenty-fifth Annual, page 504, and which is different in more than one respect from the present one. In that case, Mr. Justice Howell, with a majority of the court, held, too broadly, we conceive, that the validity of a tax sale can be raised by the plaintiff in execution, with no one else but said plaintiff and the purchaser as parties to the proceeding. The tax sale which, then, the court had under consideration, was one made prior to the constitution of 1868, when the deed from the collector was insufficient to establish title, and in fact was not complete unless accompanied by proof of the existence and legality of the assessment. Besides, in that exceptional case, the owner had, within the delay fixed by law, offered to redeem the property, which had not passed from his possession. In this one, no attempt to redeem was made by either the owner or the creditor, and the delay within which that right could have been exercised has expired.

Mr. Justice Wyly did not concur in the views expressed by his associates, and his dissenting opinion is but an additional link in the unbroken chain of more than fifty decisions rendered by our court. He said: "Until the tax sale is set aside in a revocatory action, contradictorily with all parties in interest, the creditor can not proceed to enforce his mortgage, because, whether he has a mortgage or not still existing on the property depends upon the result of the inquiry whether the

·sale to enforce the superior debt, the tax, was formal and valid. Until this result is ascertained in a proper proceeding the formalities neces- ·sary in a tax sale are presumed to have been observed by the officers of ·the State and the sale presumed to be valid.

"Like every forced alienation, a tax sale is liable to be avoided 'for relative nullities; but I have yet to learn that the form of procced- ing to ascertain these nullities is different in a tax suit from that in a judicial sale. Both kinds of sales are made upon the faith of the State. They are not snares laid to entrap honest bidders. The title given ·by the State, like that acquired at a judicial sale, is presumed to be valid until the contrary is shown in a legal manner.

"It is only simulated sales that may be disregarded; actual contracts, though in fraud of creditors, must be attacked in a direct action."

23 An. 44, 331; 13 An. 155; 14 An. 560, 495; 17 L. 517; 6 R. 21, 152; 6 L. 268; 9 L. 542; 4 An. 439; 3 L. 476; 1 An. 297; 4 L. 473; 8 L. 423; 1 L. 491; 11 L. 438; 6 M. 418, 574; 1 N. S. 537, 633; 23 An. 175; 24 An. 224; 25 An. 236.

There is no error 'n the judgment of the lower court.

It is therefore ordered, adjudged, and decreed that said judgment be ·and it is ⌐ereby affirmed at the costs of defendant in both courts.