# RIDINGS v. JOHNSON.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF LOUISIANA.

No. 44. Submitted October 29, 1888. — Decided November 12, 1888.

When a bill in equity is dismissed by the court below on a general demurrer, without an opinion, it is an imposition on this court to throw upon it the labor of finding out for itself the questions involved, and the arguments in support of the decree of dismissal.

It is settled law that courts of the United States lose none of their equitable jurisdiction in States where no such courts exist; but, on the contrary, are bound to administer equitable remedies in cases to which they are applicable, and which are not adapted to a common law action.

The complainant, being the owner of a tract in Louisiana, sold it to the intestate of one of the defendants, receiving a part of the purchase money in cash and notes for the remainder secured by a mortgage of the tract, which was not recorded. The purchaser afterwards mortgaged the tract to the other defendant, and then died insolvent. The second mortgagee then caused the tract to be sold under judicial proceedings to pay his mortgage debt, no notice being given to the complainant, although he was aware of the nature of his claim upon the property. The complainant, having caused his mortgage to be recorded, filed this bill to enforce his rights by a rescission of the sale to the decedent, offering to refund the cash received by him and to give up the unpaid mortgage notes. *Held*, that it was a proceeding in equity.

Since the passage of the act of 1855, p. 335, codified in the Revised Stat-

utes of Louisiana of 1870, p. 617, an unrecorded mortgage has no effect as to third persons, not parties to the act of mortgage or judgment, even though they had full knowledge of it.

In the state of the record it is impossible to determine whether the complainant is entitled to all, or to a part, or to any of the relief which he seeks, and, the court below having erred in dismissing his bill for want of jurisdiction, the case is remanded for further proceedings.

IN EQUITY. Defendant demurred. The demurrer was sustained and the bill dismissed. The complainant appealed. The case is stated in the opinion of the court.

*Mr. James H. Graham* for appellants submitted on his brief.

No appearance for appellee.

MR. JUSTICE BRADLEY delivered the opinion of the court.

This case comes before us in a most unsatisfactory manner. It is an appeal from a decree dismissing a bill in equity on demurrer; and the record is grossly imperfect in omitting to set forth the documents referred to in the bill, and necessary to a fair understanding of the case; there is no opinion of the court below showing the reasons of the decree, and no brief or appearance of counsel for the appellees to explain on what grounds the bill of complaint was faulty or insufficient. It is an imposition on the court thus to throw upon it the labor of finding out for itself the questions involved, and the arguments in support of the decree of dismissal. This is specially true where, as in the present case, the system of laws out of which the controversy grows, is an exceptional one and unfamiliar to the great body of lawyers and judges of the country.

The leading facts of the case, as stated in the bill, are as follows: In December, 1865, the original complainant, Cornelius F. Voorhies, sold to Samuel K. Johnson, the ancestor of one of the defendants, the Experiment plantation situated in the parish of Avoyelles, and for part of the purchase money received from Johnson his two promissory notes for $4000 each, payable at a bank in New Orleans on the 1st of February,

1867, and 1868, which notes were secured by special mortgage and vendor's privilege, reserved in the act of sale. This act was not recorded in the office of the recorder of the parish until April, 1872. At the maturity of the notes the time for their payment was extended to the year 1871, when payments were made amounting in the aggregate to $2727. No other payments have ever been made.

On the 6th of February, 1868, Johnson granted to Payne, Huntington & Co. a special mortgage on the same plantation to secure future advances to the amount of $30,000, to aid in cultivating it, and gave them his four notes for $7500 each. When Payne, Huntington & Co. took this mortgage they were fully aware of Voorhies's right of mortgage and privilege on the plantation, and in their act of mortgage dispensed with the production of a mortgage certificate. On the 15th of March, 1870, Voorhies gave Payne, Huntington & Co. another mortgage on the same plantation for $26,000, to cover $20,000, then acknowledged to be due, and $6000 more to be thereafter advanced.

After this, Johnson dying insolvent, Payne, the other defendant, who was the head of the firm of Payne, Huntington & Co., and assignee of the mortgages and notes given to his firm, in December, 1873, sued out an executory process from the District court of the parish of Avoyelles for the full amount of the two mortgages given to the firm, namely, $50,000, and had the plantation sold, and became himself the purchaser for the sum of $20,210.33, and retained the whole amount of adjudication on account of his debt. Of these proceedings Payne gave no notice to Voorhies, (who resided in Missouri and was ignorant of what was being done,) and, to facilitate the proceedings, procured from Johnson's executor a written waiver of notice of demand, and notice of seizure, and time, and a consent that the sheriff proceed with the seizure and sale as if the formalities had been strictly complied with.

The sale upon the executory process was made in February, 1874, and a little over a year thereafter, in March, 1875, Voorhies filed the original bill in this case, to which the defendant

Payne demurred. The bill was then amended by filing what is denominated in the record a supplemental bill, but which is more in the nature of an amended bill — setting forth the facts above stated with more particularity, and praying, 1st, for a cancellation of the sale made by Voorhies to Johnson, and a retrocession of the plantation ; 2d, if this should be refused, then, for a decree of nullity of the executory proceedings and sale to Payne, and for a recovery of the amount due on the complainant's two notes, with an allowance of vendor's privilege and mortgage with priority over the mortgages given to Payne, Huntington & Co. ; 3d, if the decree of nullity should be refused, then, that the complainant might be decreed to be paid out of the proceeds of the adjudication to Payne, and that the latter might be condemned to pay accordingly ; and 4th, for general relief.

The defendants again demurred, and the demurrer was sustained and the bill dismissed. As the demurrer was a general one, we cannot know with certainty for what reason it was sustained by the court. There was a motion for rehearing, and the grounds of that motion are spread upon the record, as well as the complainant's brief, presented to the court on that occasion. These documents lead us to infer that the principal grounds of objection to the bill were, first, that the executory process had the effect of a judgment, and, being decided by a state court, could not be brought in question in a federal tribunal; secondly, that a proceeding to annul a sale and compel the vendee to retrocede the property should be an action at law, and not a suit in equity. The court gave the complainant leave to amend his bill by inserting a charge of fraud and a prayer for discovery, so as to give equitable jurisdiction ; but this the complainant declined to do, and stood on the equity of his bill. Whereupon the following consent order was made, to wit : " On motion of the complainant and of defendants, suggesting that the former declines converting his action into one for discovery, as allowed by the decree for a new trial, it is agreed that this case be again submitted to the court on the defendants' demurrer to the jurisdiction of the court that this is not a case in equity, but one at law."

Thereupon the court made à final decree dismissing the original and supplemental bills, and from that decree the present appeal was taken.

The ground on which the bill thus seems to have been finally dismissed, namely, that it exhibits a case for an action at law only, and not for a suit in equity, is untenable. The prayer for a cancellation of the original sale by Voorhies to Johnson is based on the rule of law which prevails in Louisiana with regard to commutative contracts, that is, "contracts in which what is done, given, or promised by one party, is considered as equivalent to, or a consideration for, what is done, given, or promised by the other." Civ. Code, art. 1768. The code declares that "a resolutory condition is implied in all commutative contracts, to take effect in case either of the parties does not comply with his engagements; in this case the contract is not dissolved of right; the party complaining of a breach of the contract may either sue for its dissolution with damages, or, if the circumstances of the case permit, demand a specific performance." Civ. Code, art. 2046. "The dissolving condition, . . . when accomplished, operates the revocation of the obligation, placing matters in the same state as though the obligation had not existed." The creditor seeking to avail himself of it is obliged to restore what he has received. Civ. Code, art. 2045. "If the buyer does not pay the price, the seller may sue for the dissolution of the sale." Civ. Code, art. 2561. In certain cases "the judge may grant to the buyer a longer or shorter time, according to circumstances, provided such term exceed not six months." Civ. Code, art. 2562. In order to enforce the resolutory condition there must be a judicial demand and a regular adjudication. Hennen's Digest, art. Obligations, VIII. (b), and cases there cited. This resolutory condition may be waived, or such changes may have taken place that the parties cannot be put back into the same position in which they were, or the delinquent party may have had a proper excuse for want of promptness in performance; all which things are proper to be submitted to the judgment of a court. In the present case, the complainant offered by his bill to refund all the

money he had received on the sale, and to give up and cancel the two unpaid notes which he still held. Now, it seems to us perfectly clear that a suit for enforcing such a condition is eminently an equitable proceeding. The inquiry necessary to be made into all the circumstances of the case with a view to the possible exercise of discretion in giving to the defendant further time, the decree of rescission itself, and the mutual accounts to be rendered by the parties for interest received on one side and fruits and profits on the other — one and all — either belong, or are suitable, to equitable modes of relief, and would be entirely unsuited to a common law action. The fact that an action of nullity lies in such a case in Louisiana does not vary the matter. Such an action lies there because there are no courts of equity in that State; all suits are actions at law; but, in the nature of things, if full justice is to be done, some of these actions must admit of lines of inquiry, and methods of relief which, under the English system, would be proper for a suit in equity. And it is settled law that the courts of the United States do not lose any of their equitable jurisdiction in those States where no such courts exist; but, on the contrary, are bound to administer equitable remedies in cases to which they are applicable, and which are not adapted to a common law action. Thus, an equitable title or an equitable defence, though allowed to be set up in a state court, cannot be set up in an action at law in the same State in the federal courts, but must be made the subject of a suit in equity. *Fenn* v. *Holme*, 21 How. 481; *Hurt* v. *Hollingsworth*, 100 U. S. 100. We have distinctly held that the equity jurisdiction and remedies conferred by the laws of the United States upon its courts cannot be limited or restrained by state legislation, and are uniform throughout the different States of the union. *Payne* v. *Hook*, 7 Wall. 425. We think, therefore, that the court erred in dismissing the bill for want of jurisdiction.

There is still another ground for this conclusion. The second prayer of the bill is for nullity of the proceedings under the executory process, and for a recovery of the amount due to the complainant as holding a mortgage superior in rank to

the mortgages given to Payne, Huntington & Co.   In other words this is virtually a prayer to annul the sale to Payne, to decree priority in favor of complainant, and to have the property foreclosed and sold under his mortgage for the satisfaction of his debt.   If not in words, this is the effect that would be given to the prayer in view of the prayer for general relief. Surely it cannot be disputed that this is a prayer for equitable relief.

Therefore, if there was nothing more in the case than the question of jurisdiction, we should be obliged to reverse the decree at once, and send the case back for further proceedings. But, on an appeal in an equity suit, the whole case is before us, and we are bound to decide it so far as it is in a condition to be decided.   The bill was dismissed on demurrer for want of jurisdiction.   Though the court below may have erred in dismissing it on this ground, yet if we can see that there is any other ground on which it ought to be dismissed, for example, want of equity on the merits, we must affirm the decree.   This makes it necessary that we should go into a further examination of the case made by the bill and supplemental bill.

As before stated, we are laboring under a great deal of embarrassment on account of the imperfect condition of the record, and the absence of any indication on the part of the defendant as to the grounds on which the bill is objected to. But we think sufficient appears to enable us to form a tolerably satisfactory conclusion.

*First*, let us examine the main ground of complainant's claim to relief, namely, that his vendor's privilege and mortgage is superior in right to that created by the mortgages given to Payne, Huntington & Co., and hence that he is not bound by the foreclosure of their mortgages by means of the executory process.   If this ground is untenable, if he has no such superior right, the main support of his case is taken away.   And, of course, we must take the case as it is made by his own showing.

Since, as we have seen, the complainant failed to have his act of sale, by which he reserved the vendor's privilege and

mortgage, recorded until April, 1872, more than six years after its date, and the mortgages were given to Payne, Huntington & Co. in the meantime, namely, in February, 1868, and March, 1870, they having full knowledge of his right, the question is raised, which was once much mooted in Louisiana, whether an unrecorded mortgage or conveyance has priority over a subsequent one taken by a person who has full knowledge of the first. The conflict of opinion probably arose from variations in the phraseology of different laws standing concurrently on the statute book. In 1808 the first code was adopted, and in the section relating to the Registering of Mortgages, it was declared that to protect the good faith of third persons ignorant of the existence of mortgages, and to prevent fraud, conventional and judicial mortgages should be recorded, or entered in a public book kept for that purpose, within six days from their date, when made in New Orleans, and one day more for every two leagues distance therefrom; and that if such recording was made within that time, it should have effect against third persons from the date of the mortgage; but if not, the mortgage should "have effect against third persons, being *bona fide,* only from the day of such recording." Code of 1808, p. 464, art. 52. This law undoubtedly dispensed with inscription as against third persons having notice of the mortgage; for they could not be said to take in good faith a subsequent incumbrance antagonistic to the mortgage. But not long after the adoption of the code (March 24th, 1810) an act was passed declaring that no mortgage, and no notarial act concerning immovable property, should have any effect against third persons until recorded in the office of the judge of the parish. 3 Martin's Dig., 138; 2 Moreau-Lislet, 285. This was certainly peremptory language, and, taken literally, gave no room for indulgence in favor of an unrecorded mortgage against third persons, whether they had knowledge of it or not.

Then came the code of 1825, which repeated, in substance, the provision of the code of 1808, declaring, in articles 3314 and 3315, that mortgages are only allowed to prejudice third persons, when they have been publicly inscribed on records

kept for that purpose; but that by the words "third persons" are to be understood all who are not parties to the act or judgment on which the mortgage is founded, *and who have dealt with the debtor either in ignorance of the right or before its existence.* This again opened the door for indulgence. But two years later (March 20, 1827) an act was passed relating to conveyances in New Orleans, declaring that, whether executed before a notary or by private act, they should have no effect against third persons but from the day of their being registered. 2 Moreau-Lislet, 303. And in 1855 an act was passed declaring that no notarial act concerning immovable property should have any effect against third persons until the same should have been recorded in the office of the parish recorder or register of conveyances of the parish where the property was situated; and that all sales, contracts and judgments not so recorded should be utterly null and void except between the parties thereto; and that the recording might be made at any time, but should only affect third persons from the time of the recording. Acts of 1855, p. 335; Rev. Stat. 1870, p. 617. In the same direction, on the revision of the code in 1870, the last clause of article 3315, (now 3343,) which made the ignorance of third persons a factor in the requirement of registry, was omitted, and the provisions of the act of 1855 were inserted as new articles in the code under the numbers 2264, 2265, 2266.

Under these changing and inconstant conditions of the textual law, the Supreme Court of Louisiana for a long time, though with occasional opposition and dissent, maintained the doctrine that actual knowledge of a prior unrecorded title or mortgage is equivalent to the registry of it, or to notice resulting from such registry, so far as the person having such knowledge is concerned. The cases holding this view are collected in Hennen's Digest, (ed. 1861,) tit. Registry III. (a), (1), D. The last cases firmly adhering to this doctrine were *Swan* v. *Moore,* 14 La. Ann. 833, decided in 1859; and *Smith* v. *Lambeth's Executors,* 15 La. Ann. 566, decided in 1860. Chief Justice Merrick dissented in the former case, holding to the literal interpretation of the statute of 1855 as "the last

expression of the legislative will upon the subject." This court followed the Louisiana decisions in *Patterson* v. *De la Ronde*, 8 Wall. 292, decided as late as December Term, 1868.

But in 1869 the tide turned, and the Supreme Court of Louisiana came around to Chief Justice Merrick's view, and in the cases of *Britton & Koontz* v. *Janey*, 21 La. Ann. 204, and *Harang* v. *Plattsmier*, 21 La. Ann. 426, held to the strict construction of the law, namely, that an unrecorded mortgage was void as against third persons even though they knew of such mortgage. The same ruling was made in *Rochereau* v. *Dupasseur*, 22 La. Ann. 402 In all of these cases the prior mortgages were actually recited in the subsequent ones, and yet lost their rank as against subsequent mortgages by reason of not being reinscribed in proper time. These decisions have been followed by a long series of others to the same purport. See *Levy* v. *Mentz*, 23 La. Ann. 261; *Succession of Simon*, 23 La. Ann. 533, 534; *Gaiennié* v. *Gaiennié*, 24 La. Ann. 79; *Rochereau* v. *Delacroix*, 26 La. Ann. 584; *Villavaso* v. *Walker*, 28 La. Ann. 775; *Adams & Co.* v. *Daunis*, 29 La. Ann. 315: *Watson* v. *Bondurant*, 30 La. Ann. 1, 11.

We may, therefore, regard it as the settled jurisprudence of Louisiana, that, at least from and since the passage of the law of 1855, an unrecorded mortgage has no effect as to third persons not parties to the act of mortgage or judgment even though they had full knowledge of it. The registry seems to be intended not merely as constructive notice, but as essential to the validity of the mortgage as to third persons.

It is interesting to know that this result coincides with the doctrine of the French jurists, deduced from the Code Napoleon, article 2134 of which declares, that "between creditors, a mortgage, whether legal, judicial, or conventional, has no rank except from its inscription by the creditor on the records of the custodian, in the form and manner prescribed by law," saving certain enumerated exceptions, not relating to the matter in hand. See Paul Pont, Privilèges et Hypothèques, arts. 727, 728.

Privileges, especially the vendor's privilege, and other privileges affecting immovable property, have undergone much the

same course of legislative restriction as that imposed upon mortgages. Originally nearly all privileges, being created by the law itself, were valid and effective without any public registry. But such secret liens often produced unjust effects, and legislation has been resorted to for the purpose of avoiding this evil. The Civil Code of 1825 declared that "the vendor of an immovable or slave only preserves his privilege on the object when he has caused to be duly recorded, at the office for recording mortgages, his act of sale, in the manner directed." The lien, or privilege of laborers, mechanics and contractors, was subjected to a like restriction; and as to both kinds, it was declared that they must be recorded within six days from date, an additional day being allowed for every two leagues distance from the place where the act was passed to that where the register's office was kept; and if not recorded within the time limited, they should have no effect as a privilege, that is, should confer no preference over creditors who had acquired a mortgage in the meantime and recorded it; but would be good against third persons from the time of being recorded. Civ. Code, arts. 3238–41. This was the law in force when Voorhies sold the plantation to Johnson, and when Johnson gave his first mortgage to Payne, Huntington & Co. In August, 1868, a new constitution was adopted in Louisiana, by the 123d article of which it was declared that the legislature should provide for the protection of the rights of married women to their dotal and paraphernal property and for the registration of the same; but that no mortgage or privilege should thereafter affect third parties unless recorded in the parish where the property to be affected was situated; and that tacit mortgages and privileges then existing in the State should cease to have effect against third persons after the 1st of January, 1870, unless duly recorded; and that the legislature should provide by law for the registration of all mortgages and privileges. The legislature was not slow to obey this constitutional injunction. In September, 1868, it passed a law amending the sections of the code recited above, and changing article 3240 so as to make the privileges referred to, namely, those of a vendor of an immovable, and of laborers

and mechanics, valid against third persons only from the time of recording; thus taking away the retroactive effect of a registry which it previously had when made within the prescribed time. In March, 1869, a further law was passed providing for the registry of the privileges of married women for their dotal and paraphernal rights, and declaring that all persons entitled to a mortgage or privilege on the property of another shall cause it to be recorded in the mortgage book of the parish; which recording, it was declared, shall have the effect of operating a mortgage or privilege on the property, but no other effect. These provisions were subsequently incorporated in the Revised Code, adopted in March, 1870, and article 3241 (now 3274) was further amended by declaring that no privilege shall confer a preference over creditors who have acquired a mortgage unless recorded on the day the contract was entered into.

All these amendments of the law have been interpreted and administered by the courts of Louisiana in such a manner as to give them their full literal effect. See *Lombas* v. *Collet*, 20 La. Ann. 79; *Marmillon* v. *Archinard*, 24 La. Ann. 610; *Gay* v. *Bovard*, 27 La. Ann. 290; *Bank of America* v. *Fortier*, *3d opposition of Gay*, 27 La. Ann. 243; *Morrison* v. *Citizens' Bank*, 27 La. Ann. 401; *Succession of Marc*, 29 La. Ann. 412; *Logan* v. *Herbert*, 30 La. Ann. 727; *Slocomb* v. *Rogilio*, 30 La. Ann. 833; *Gay* v. *Daigre*, 30 La. Ann. 1007; *Gallaugher* v. *Hebrew Congregation*, 35 La. Ann. 829; *Givanovitch* v. *Hebrew Congregation*, 36 La. Ann. 272.

An examination of these cases shows that the requirement that a vendor's privilege must be recorded within the time allowed by law (that is, within six days from date, prior to 1870, and on the day of the date, since 1870) in order to give it priority over a mortgage recorded before it, relates to mortgages given by the vendee as well as mortgages given by the vendor. According to the decisions, the act of sale passes the property to the purchaser whether recorded or not, so that he can make valid mortgages on it, as well as subject it to judgments against him; but unless recorded in the office of the register of mortgages, it does not preserve the vendor's

privilege. It was at one time held otherwise, namely, that if the vendor's privilege was recorded simultaneously with the act of sale, (which it always is when it is contained in the act of sale,) the privilege was seasonably recorded to preserve it in full force. *Rochereau* v. *Colomb*, 27 La. Ann. 337; *Jumonville* v. *Sharp*, 27 La. Ann. 461. But these decisions were overruled in subsequent cases. *Gallaugher* v. *Hebrew Congregation*, 35 La. Ann. 829; *Givanovitch* v. *Hebrew Congregation*, 36 La. Ann. 272.

The doctrine of the French jurists, deduced from the Code Napoleon, corresponded substantially with the decisions in *Rochereau* v. *Colomb*, and *Jumonville* v. *Sharp*. The text of the code was nearly the same as that of the Louisiana statutes. Art. 2106 declares, that " between creditors, privileges have no effect on immovables, except when they are made public by inscription on the records of the custodian of mortgages, in the manner prescribed by law, and to be computed from the date of such inscription," subject to the exceptions enumerated which do not affect the present question. See Paul Pont, Privilèges et Hypothèques, arts. 252, 253, etc. But, of course, in the law of real estate (immovables) we are to follow the final decisions of the state courts. *Thatcher* v. *Powell*, 6 Wheat. 119; *Beauregard* v. *New Orleans*, 18 How. 497; *Suydam* v. *Williamson*, 24 How. 427; *Fairfield* v. *Gallatin County*, 100 U. S. 47; *Bondurant* v. *Watson*, 103 U. S. 281; *Enfield* v. *Jordan*, 119 U. S. 680.

From this review of the Louisiana law of registry as applied to mortgages and privileges, it is clear that Voorhies, by neglecting to record his act of sale until 1872, lost the priority of his vendor's privilege and mortgage as against Payne, Huntington & Co., provided they recorded their mortgages taken in 1868 and 1870; and, in that case, they had a perfect right to proceed to the foreclosure of their mortgages, without making Voorhies a party if their mortgages contained the *pact de non alienando*. But here again the defects of the record prevent us from knowing the truth; defects which the appellee, Payne, could have had remedied had he given any attention to this appeal, and required the acts of sale, and the pro-

ceeding referred to in the bill of complaint, to be returned to this court. As it is, we do not know that Payne, Huntington & Co. did record their mortgages, nor whether they contained the *pact de non alienando.* As the case stands before us it does not appear that they were ever recorded, or that they contained the pact. If neither of these things took place, then the complainant is entitled to at least a portion of the relief which he seeks. He is entitled to have the property foreclosed and subjected to the payment of his mortgage. For, in that case, being a prior mortgagee from the time of recording the act of sale, he is not bound by the proceedings on the executory process to which he was not a party. *Dupasseur* v. *Rochereau,* 21 Wall. 130; *Jackson* v. *Ludeling,* 21 Wall. 616. He is hardly in a position to ask for a rescission of his sale to Johnson, whether his privilege and mortgage have been prescribed or not, for it has been held by the Supreme Court of Louisiana that the parties to the sale and the rescission must be the same. *Augusta Ins. Co.* v. *Packwood,* 9 La. Ann. 74. The suit is now properly against Payne, as well as the executor of Johnson, and Payne is not one of the parties to the act of sale. However, on this point we give no opinion.

*The decree of the Circuit Court must be reversed, and the cause remanded with instructions to overrule the demurrer, and to give the defendants leave to answer the bill, with such further proceedings as law and equity may require.*