## WM. WATERALL & COMPANY

*v.*

## STRAYER.

San Juan, Equity, No. 988.

MARSHALLING COLLATERAL IN RECEIVERSHIP.

Equity—Accrual of Creditor's Rights.
    1. The appointment of a receiver fixes the rights of the creditors.

Waterall & Co. v. Strayer.

as against the receivership estate, and is the basis of dividends regardless of collateral.

Porto Rico—Preferences.

2. Under the Porto Rico Civil Code, claims for preference would date from filing.

Civil Code—Spanish Bankruptcy Law.

3. The Civil Code does not apply to bankruptcy, but to insolvency; there being a separate law for bankruptcy of commercial houses.

Federal Court—Local Preferences.

4. Preferences as set out in the local law will be enforced in the Federal court.

Local Preferences—Bankruptcy Act.

5. The preferences declared in the Civil Code are not void as conflicting with the Bankruptcy Act, and will be enforced so far as they are not in conflict with bankruptcy liens.

Repeal of Act—Does not Extend Another Act.

6. The fact that the Spanish Bankruptcy Act is repealed does not extend the insolvency provisions of the Civil Code, but leaves the matter to be provided for under the Federal Bankruptcy Act.

Federal Court—Equity Jurisdiction.

7. The equity jurisdiction of the Federal courts is not affected by local laws, but this applies to the priority of liens fixed by such laws.

Porto Rico—Dual System of Courts.

8. Congress can provide one system of courts in territories, as it did in Montana, but in Louisiana, Hawaii, and Porto Rico has provided for both local and Federal jurisdictions.

Opinion filed May 18, 1918.

---

*Mr. O. B. Frazer* for Turnbull Wagon Company.

*Mr. Chas. Hartzell* for American Colonial Bank and the Royal Bank of Canada.

HAMILTON, Judge, delivered the following opinion:

This cause comes up upon a report of special master Savage giving a certain order of marshalling of securities held by the American Colonial Bank and the Royal Bank of Canada which will result in lessening the dividends to general creditors, and is therefore opposed by one of these creditors. It seems that defendant, Strayer, made notes to the two banks in question, and gave certain collateral for all except one note. As to that one the bank in question is a general creditor. The report of the master fixes the maturity of the bank claims as December 29, 1916, the date of the appointment of the receiver in this case, and deducts what has since been realized by the bank from collateral from the second amount. The contention of the general creditor is that the claims should be stated as of the date upon which they were filed, which would take into account the collateral already realized. The result is different according to these respective points of view.

1. The decision of Circuit Judge Taft in Chemical Nat. Bank v. Armstrong, 28 L.R.A. 231, 8 C. C. A. 155, 16 U. S. App. 465, 59 Fed. 372, was that the appointment of a receiver fixes the rights of creditors against a receivership estate; and that this is the basis of dividends, regardless of rights growing out of collateral. The same conclusion was reached by Chief Justice Fuller of the Supreme Court of the United States in Merrill v. National Bank, 173 U. S. 131, 43 L. ed. 640, 19 Sup. Ct. Rep. 360, in the following language: "Our conclusion is that the claims of creditors are to be determined as of the date of the declaration of insolvency, irrespective of the question whether particular creditors have security or not. When

Waterall & Co. v. Strayer.

secured creditors have received payment in full, their right to dividends and their right to retain their securities cease, but collections therefrom are not otherwise material. Insolvency gives unsecured creditors no greater rights than they had before, though through redemption or subrogation or the realization of a surplus they may be benefited."

There were dissenting opinions, including that of Mr. Justice White, but no decision of the Supreme Court has reversed the case. On the contrary the same doctrine was followed by the Supreme Court shortly afterwards in the case of Aldrich v. Chemical Nat. Bank, 176 U. S. 618, 44 L. ed. 611, 20 Sup. Ct. Rep. 498, where the court says: "This assignment of error was prepared by counsel prior to the decision of this court in Merrill v. National Bank, supra, in which case this court said that the inquiry on the merits was whether a secured creditor of an insolvent national bank may prove and receive dividends upon the face of his claim as it stood at the time of the declaration of insolvency, without crediting either his collaterals or collections made therefrom after such declaration, subject always to the proviso that dividends must cease when from them and from collaterals realized the claim was paid in full."

While there can be no question that this is law, it is argued that it is the law only for national banks. Nothing in the National Bank Act has been pointed out which requires a different conclusion on this point from that as to other creditors, and District Judge Day, now Mr. Justice Day, decided the same way in a case not concerning national banks in Commercial & Sav. Bank v. Robert H. Jenks Lumber Co. 194 Fed. 732, relying upon the Armstrong and Merrill Cases. It would

X. Porto Rico.—26.

Waterall & Co. v. Strayer.

seem, therefore, that this is the law in the continental United States.

2. The Civil Code controls in Porto Rico, and under the subject of Preferences this contains certain provisions which seem to be in point. Thus, §§ 1829 and 1830 provide as follows:

1829. "The residue of the estate of a debtor, after the credits which enjoy preference with regard to certain property, personal or real, have been paid, shall become part of the free property which he may possess for the payment of the other credits.

"Those which enjoy preference with regard to certain property, personal or real, and which should not have been totally paid with the amount of such property, shall be paid with regard to the deficit in the order and place pertaining thereto, according to their respective characters.

1830. "Credits which have no preference with regard to certain property, and those which have preference for the amount not collected, or when the right of preference should have prescribed, shall be paid according to the following rules:

"1. In the order established in § 1825.

"2. Those preferred by dates, according to their order, and those which have a common date, pro rata.

"3. Common credits, referred to in § 1826, without consideration of their dates." [Compilation 1911, §§ 4935, 4936.]

Under § 1829, therefore, if applicable, the banks enjoyed a preference in regard to specific property and should receive the deficit only as general creditors. It is contended that this would fix the claim of the banks as of the date of filing, that is, after reduction of what was realized from the collaterals.

Waterall & Co. v. Strayer.

3. On the other hand, it is alleged that these sections of the Civil Code are not applicable because they are part of the Spanish bankruptcy system, which cannot now prevail in view of the adoption of the National Bankruptcy Act of the United States. This, however, is not a correct statement of the law. Spain had also a Bankruptcy Law for commercial houses, and if this matter had come up in Spanish times it would have been regulated by this system, as contained in the Commercial Code, book 4. The Civil Code applies not to bankruptcy, but to insolvency; in other words, it applies to a case where a debtor is unable to pay his debts in full, and an adjustment is made with the property in hand without there being a formal bankruptcy. Allowing for differences in procedure, this case would come under the Civil Code.

4. As to whether the preferences set out in the Civil Code, §§ 1825, 1828, are now applicable, light is found in the decisions heretofore made by this court. Thus it has been held that liens given by a local law in Porto Rico will be enforced in equity. Welch v. Central San Cristobal, 7 Porto Rico Fed. Rep. 205, 208. And thus Civil Code, § 1824, was recognized in equity, although declared inapplicable to a claim for oil used in manufacturing sugar. Berwind White Coal Co. v. Borinquen Sugar Co. 6 Porto Rico Fed. Rep. 567, 568. On the other hand, the fact that there is a lien recognized by law does not fix its priority as regards other liens. Welch v. Central San Cristobal, 7 Porto Rico Fed. Rep. 205, 214. The subject of liens was fully considered in Re Del Pilar Hermanos, 8 Porto Rico Fed. Rep. 605, 609, it being held that the common-law lien is practically the equivalent of the civil-law privilege. A lien fixed by contract is at civil law called "grava-

men," while that imposed by the law itself is called "privilege." Such Porto Rican liens are recognized in bankruptcy.   Re Del Pilar Hermanos, supra.

   The privileges in question make up title 17, entitled "Concurrence and Preference of Credits in Book 4 of the Porto Rico Civil Code."   After the first chapter on general provisions, chapter 2 contains §§ 1822–1826 (Spanish Civ. Code, arts. 1920–1925), giving the classification of credits, or, as it would be expressed at common law, the classification of debts.   Chapter 3 on the subject of Priority of Payment of Credits contains §§ 1827–1830 (Spanish. Code, arts. 1926–1929).   Section 1823 covers such privileges on specific personal property; and of these subdivision I., being liens for the construction, repair, preservation, or purchase price of such property, was enforced in this court in Re Rivera, 9 Porto Rico Fed. Rep. 145, 146.   Section 1824 gives similar privileges or liens as to land.   This, as seen above, has come up in regard to agricultural credits (refacciones), but apparently not in equity. These would be what Manresa called debts specially privileged (singularmente privilegiados), that is to say, privileged as to specific property.   12 Manresa, 694.   Section 1825 confers a general lien for taxes, agriculture, expenses, wages, and the like, and would be those called meramente privilegiados.   The last class of these arises from indebtedness without a special privilege, but evidenced by public instrument or final judgment. This class, and this alone, has been declared without a lien under the provisions of the Bankruptcy Law.   Re Rivera, supra.   It had already been declared to confer no lien on notes reduced to a notarial instrument because not coming fairly within its terms, inasmuch as notes are governed by the pro-

Waterall & Co. v. Strayer.

visions of the Code of Commerce, which are superseded by the Bankruptcy Act. Re Boucet, 7 Porto Rico Fed. Rep. 403. To somewhat the same effect is Re Ramirez-Quinones, 8 Porto Rico Fed. Rep. 207.

5. The provisions of title 17 of the Civil Code of Porto Rico, above discussed, therefore are not void as conflicting with the Bankruptcy Act. So far as they confer liens which are not in conflict with liens expressed in that act, they should be enforced. Whatever doubt there was as to their being a part of the Spanish Bankruptcy Act has been resolved. They are not part of the Spanish Bankruptcy Act, but are parts of the Spanish Insolvency Law, which provides for lien in case of insolvency. That is precisely what comes up in a receivership case. There can seldom be a receivership unless there is an insolvency either absolute or temporary. But not only will a court of equity follow its own modes of procedure, and therefore in case of conflict not regard the provisions of §§ 1827–1830, but those provisions are not applicable to the case at bar in any sense.

Defendant Strayer's business was a commercial business in the strictest sense of the word, and the obligations in question on this particular proceeding are notes, which are essentially commercial instruments. If bankruptcy were necessary at all, this case would come under the Spanish Code of Commerce adopted 1886 and extended to Porto Rico the same year. This contains a general scheme of commercial law, originating perhaps with the celebrated Ordonance of Louis XIV., and being in its present shape a revision of the old Spanish Code of Commerce of 1826. By it all matters connected with commerce, whether on land or sea, are discussed and controlled. It is

Waterall & Co. v. Strayer.

divided into four books, of which the fourth is devoted especially to Suspension of Payments, Bankruptcies, and Prescriptions. But the sections of the Civil Code which have been discussed do not apply at all to a case of bankruptcy. So far as that is concerned they would be in force. But the cited sections of the Civil Code do not apply at all to the Strayer Case, because this is one of a strictly commercial nature. Article 870 provides that a merchant may suspend payment under the supervision of a judge; and art. 874, that the merchant shall be considered in a state of bankruptcy when he does not meet his current obligations. The Civil Code, therefore, applied to persons other than merchants; for the Spanish, like European laws, contemplates an entirely different scheme for merchants and for other kinds of persons.

6. The case is not changed by the fact that the Spanish Suspension and Bankruptcy Law has been repealed by the Federal Bankruptcy Act. This does not extend the Civil Code to merchants, it merely leaves merchants not regulated except by the Federal Bankrupty Act. The Code of Commerce was exclusive in such cases, and the Civil Code did not apply to merchants, and cannot be made now to apply to merchants, because Congress has repealed the old law which did govern them. That would be extending the Civil Code by implication, when it has not been extended either by local legislature or by act of Congress. Nor does this leave the merchant when insolvent governed by no law. It may very well be that his transactions, particularly notes and bills, made while he was solvent, in view of the provisions of the Code of Commerce, are governed by book 1 on the subject of merchants and commerce in general, and book 2 on the subject of special commercial contracts, if any

Waterall & Co. v. Strayer.

of these, relating mainly to partnerships, factors, commercial loans, and the like, are applicable. Book 3 on the subject of maritime commerce does not concern the Strayer transactions, and is moreover to be considered as repealed by the Federal Navigation Laws.

If there is any case not covered by the provisions of the Code of Commerce, it must be held to come within the general commercial law which is recognized by Federal courts. The application of the laws of the several states required by the Judiciary Act is limited to strictly local laws as to rights and title to realty and other immovable property within the state. It does not apply to matters of a commercial nature, whose true interpretation is to be sought in the general principles of commercial jurisprudence. Swift v. Tyson, 16 Pet. 1, 10 L. ed. 865; Burgess v. Seligman, 107 U. S. 20, 27 L. ed. 359, 2 Sup. Ct. Rep. 10; Baltimore & O. R. Co. v. Baugh, 149 U. S. 371, 37 L. ed. 774, 13 Sup. Ct. Rep. 914. In other words, in questions of general law Federal courts follow general rather than local law. This applies to principles affecting interstate and other transactions, and there is no reason why it does not also apply to the principles of equity, which are even more common in their application throughout the whole Union. Payne v. Hook, 7 Wall. 425, 430, 19 L. ed. 260, 261. Not only is equity uncontrolled by the state legislation, but where there is no local equity system the general principles of equity will nevertheless be applied in the Federal courts. Hurt v. Hollingsworth, 100 U. S. 100, 25 L. ed. 569; Ridings v. Johnson, 128 U. S. 212, 217, 32 L. ed. 401, 402, 9 Sup. Ct. Rep. 72.

7. The question arises how far does the principle of Romeu v. Todd, 206 U. S. 358, 51 L. ed. 1093, 27 Sup. Ct. Rep. 724,

Waterall & Co. v. Strayer.

apply? This case holds that an equitable right cannot avail against a local law where both purport to create a lien. While that case was decided under a section of the Foraker Act which preserves the local laws of Porto Rico until changed by the local legislature (Act of April 12, 1900, § 8), it is but carrying out the general principle that equity will enforce local liens. It is a question raised in this court in Grosch v. Central Vannina, 7 Porto Rico Fed. Rep. 57, .73, how far local legislation can affect the jurisdiction of this court in equity. The Romeu Case decides that this court cannot set aside a local lien in order to enforce a lien given by equity procedure; but this court (Jones Act, § 41) is directly given equity jurisdiction, and this provision would not permit local legislation to interfere with the principles of equity as generally enforced. That would be permitting a repeal of the Federal grant of equity jurisdiction by the subordinate powers granted to the local legislature. While it is necessary to discuss the question of lien as affected by the Bankruptcy Act, it is to be remembered that the case at bar is not one of bankruptcy. The question of bankruptcy law arises only in solving the question whether the Civil Code, §§ 1829, 1830, are or are not repealed by the national Bankruptcy Act. Even if they were not repealed, the question would still come up of their application under the principles of equity jurisprudence. These principles are based upon the enforcement of rights in a certain manner and in a certain order which has grown up in the courts of chancery. Recognizing local liens in equity is a very different thing from recognizing the priority given these liens in local courts; for this priority cannot be recognized in courts of equity without destroying the very basis of equity itself. This court sitting as a

Waterall & Co. v. Strayer.

court of equity therefore has recognized, and will recognize in all proper cases, the privileges or liens declared in Civil Code, §§ 1823–1826, but is not bound by the prelation or priority declared in §§ 1827, 1830, when these liens come in conflict. Whether this applies also to the prelation of liens as declared in § 1822 need not now be discussed.

8. It is quite true that Congress could institute one system of courts for territories, which would disregard the distinction of law and equity; and the Supreme Court, after some fluctuation, held in Hornbuckle v. Toombs, 18 Wall. 648, 21 L. ed. 966, that this had been done in regard to Montana and other territories. This decision, however, is not applicable in Porto Rico, for Congress has seen proper as to Porto Rico and Hawaii to divide the judicial system into distinct local courts and Federal courts. Jones Act of March 2, 1917, § 41. Each has the same kind of jurisdiction as the corresponding court in a state of the American Union. In other words, Congress has, with territories at a distance from the mainland and having a large foreign population, seen fit to depart from the old territorial system and adopt the same distinction of courts prevailing in the states themselves. This was originally done under similar conditions in Louisiana when that was a territory. This court, therefore, is governed by the principle declared in Swift v. Tyson, 16 Pet. 1, 10 L. ed. 865.

This brings us back to the case of Merrill v. National Bank, and that of Aldrich v. Chemical Nat. Bank, 176 U. S. 618, 44 L. ed. 611, 20 Sup. Ct. Rep. 498, above discussed, as covering the case at bar.

The result is that the report of the master must be confirmed, and it is so ordered.