## MAUNSEL WHITE *v.* UNION BANK et al.

The vendor of an immovable or slave only preserves his privilege on the object sold when he has caused his act of sale to be duly recorded in the office for recording mortgages. C. C. 3238. This requisition of the law is not dispensed with by proving that the person contesting the privilege had notice of the sale.

It is not sufficient for a person holding a mortgage or privilege to deposit the acts to be recorded with the recorder of mortgages; he must see that they are recorded; otherwise the mortgage or privilege will not avail against innocent third parties.

APPEAL from the District Court of Carroll, *Selby,* J. *E. Sparrow,* for appellees. *Ogden* and *Duncan* and *A. N. Ogden,* for appellant. The judgment of the court was pronounced by

SLIDELL, J. *White* purchased certain lands and slaves, under execution in the suit of the *Union Bank* v. *Payne,* and then brought this suit against the defendants, who claimed to have mortgages and privileges, in order to settle the question of priority among them, and determine to whom the purchase money was to be paid. The judgment of the district court classed the creditors as follows: 1st, the Union Bank: 2nd, *Halsey:* 3rd, *J. M. January :* thus giving them all precedence over *Merrill,* who claimed a privilege as vendor. *Merrill* has appealed.

The appellant in argument here questions the right of *White* to maintain such an action. But no such exception was taken in the court below; each creditor tacitly assented to the discussion of his rights in this form, and claimed a final decree in his own favor. All technical objections to the mode of proceeding must be considered as waived. The appellant's claim of privilege was resisted principally upon the ground that the act of sale upon which it depends was not duly recorded in the mortgage book.

The material facts presented by the evidence are as follows: In May, 1837, *McDonald* mortgaged to the Union Bank a plantation and slaves in the parish of Carroll, to secure a loan of $50,000. In June, 1837, he executed another mortgage on other slaves in the same parish, as security for the same debt. Both mortgages were, in June, 1847, inscribed in the mortgage book kept in the office of the parish judge of that parish. At the time of executing these mortgages, all the property was unincumbered, and *McDonald* appeared on the public records as its sole owner. In 1836, *McDonald* had given a bond *sous seing privé* to *J. M.* and *B. H. Payne,* to make them title to half of the plantation and slaves; and a few days afterwards the *Paynes* and *McDonald* formed a partnership as cotton planters, which lasted until 1841. On the 21st June, 1837, immediately after *McDonald* had completed his loan from the Union Bank, he, in compliance with his bond, executed before a notary public a deed of sale to the *Paynes* of an undivided half of the plantation and slaves, for the price of $60,000, namely, $10,000 cash, and the balance in six notes. It is as holder of one of these notes that *Merrill* claims the vendor's privilege. The deed declared that *McDonald* was to pay one-half of the loan of $50,000 obtained from the Union Bank, and the *Paynes* the other half. No mortgage for the price was stipulated in the deed, as is usually done. This conveyance was recorded in the record book of alienations in the proper office of Carroll Parish,

but was not inscribed in the record book of mortgages. It is proved that a separate book for recording mortgages had been kept in the office of the parish judge since 1833. In 1841, soon after the dissolution of the partnership between the *Paynes* and *McDonald*, the former executed to the Union Bank a mortgage for $31,656 45, upon the portion of the property which fell to them in the partition of the property made with *McDonald*. This mortgage was given in pursuance of the stipulations of the act of partition, and of the undertaking in the deed of purchase in 1837, by which they promised to pay one-half the Union Bank debt. It was accepted by the Union Bank upon a certificate of the recorder of mortgages of the parish of Carroll, that there was no mortgage upon the property in the name of the *Paynes*, and none in any other person's name, except that of *McDonald* to the Union Bank for $50,000, above mentioned. It was duly inscribed in the book of mortgages in Carroll Parish, in August, 1841. Under this mortgage, the property was seized and sold to *White*, the plaintiff. By subsequent deeds, duly recorded, *J. M Payne* and *B. H. Payne* mortgaged the property to *Halsey* and *January*.

We have been invited by the appellants' counsel to reconsider the opinions given in the case of *Ells* v. *Simms*, and *Penolt* v. *Chambers*, 2d Ann. 253 and 801; and this mainly upon the ground of the strong equity of a vendor to whom the price of the thing sold has not been paid. We have duly considered the arguments of counsel, and have not been able to reconcile a departure from those decisions with the express requisitions of the code, nor to distinguish the facts in this cause from those of the cases referred to. It is the privilege of vendor which *Merrill* claims; and we could not have decided the cases referred to in favor of such a claimant, without expunging from the code the article 3238, which declares that the vendor of an immovable or slave only preserves his privilege on the object, when he has caused his act of sale to be duly recorded at the office for recording mortgages in the manner thereinafter directed.

It is said, however, that the bank had notice of the existence of the privilege; and this the appellant attempts to deduce from the requisitions in the bank's charter respecting the examination of titles. With that requisition, it is said, it must be presumed that the bank complied. We find in the charter a clause requiring subscribers to stock to furnish evidences of title to the property to be mortgaged to secure the stock of the bank. This provision was made for the protection of the State touching its bonds, and does not in its terms extend to ordinary mortgages. But if the deed of partition by which the *Paynes* acquired the property from *McDonald*, and which is referred to in the mortgage, was submitted to the bank when it took a mortgage from them, instead of the original mortgage given to it by *McDonald* in 1837, that deed would not have warned them of the privilege in question; while, on the other hand, they had the certificate of the proper officer that there existed no mortgage in the name of the *Paynes*, nor any mortgage whatever upon the land, except that which the bank itself had formerly received. If we suppose the bank to have investigated still further the chain of titles; to have gone back to the sale of the undivided moiety by *McDonald* to the *Paynes* in 1837; and to have there learned that they gave notes for the price, the recorder's certificate would have justified them in believing they had been paid. It would be much more natural to suppose this than to suppose the vendor had neglected to record his privilege. It would be unreasonable, therefore, to hold the bank to further inquiry.

It is contended, that a party holding a deed of mortgage, or act from which a privilege results, has done all that the law requires of him to preserve his rights,

WHITE
v.
UNION BANK.

when he has deposited the act for record in the proper office and with the proper officer. But this proposition is inconsistent with the article 3238, which requires the creditor to cause his privilege to be duly recorded. Supposing a prior and a subsequent mortgagee to be both innocent parties, upon one of whom the consequences of the negligence of the public officer must fall, it is more equitable that they should be borne by the former than by the latter; because by diligence he could have assured himself that the mortgage was inscribed; whereas, the second mortgagee has in general nothing to rely upon but the officer's certificate of freedom from incumbrance.

It is proper, however, to add that the argument just noticed assumes a fact not proved, to wit, that the omission to record in the mortgage book was attributable to the negligence of the parish judge. It does not appear that he was ever requested so to record the deed. He may have been merely requested to register it as a conveyance, under the act of 1810.

In deciding this cause upon the point of non-registry, we are not to be understood as intimating that if the requisitions of the code were out of the way, the equity of the case would be in favor of *Merrill*. On the contrary, under the evidence in this cause, it would probably be found that the superior equity was in the bank. A decision, however, of the case in that view of it is not necessary.

We also desire it to be understood, that our opinion is limited to the question of the existence of the vendor's privilege, which is the only claim set up by *Merrill*. Whether a vendor who has neglected to record his privilege is remediless against subsequent mortgagees, or whether, on the other hand, he may still relieve himself through the resolutory condition, is a point not before us in this cause.

Judgment affirmed, with costs.