# SUPREME COURT OF TEXAS.

## AUSTIN TERM, 1862.

————

### EX PARTE FRANK H. COUPLAND.

On the 16th day of July, 1862, in vacation, F. H. Coupland applied to the Hon. R. T. Wheeler, Chief Justice, for a writ of Habeas Corpus, alleging, that he was illegally restrained of his liberty, upon Onion Creek, in Travis County, by R. T. P. Allen, and, as he believed, without any order or process whatever, or any color of either. On the 21st day of July, 1862, the respondent made his return, in which he says, that on the 25th day of June, 1862, he received an order from R. J. Townes, Provost Marshal of Travis County, commanding him to receive, and have the applicant securely imprisoned within his lines, not permitting him to communicate with any person of doubtful or suspicious character; he having been arrested on a charge of disloyalty. In obedience to this order, the respondent detained the applicant within the lines of the regiment of Confederate States troops, of which respondent was Colonel, at Camp Terry, in Travis County, until the 16th of July, at which time, under authority from Col. John S. Ford, Commandant of Conscripts, District of Texas, the respondent enrolled applicant, under the act of Congress of the Confederate States, entitled "an act to further provide for the public defence;" and thereupon discharged him from imprisonment. The discharge was in obedience to instructions from the Provost Marshal; the applicant was enrolled with his consent, and at his request was attached to Co. B, of respondent's regiment. Since the date of enrollment, respondent has had no other control over applicant than such as vests in him as a Colonel in the Provisional Army of the Confederate States, over a soldier in the army under respondent's command and attached to his regiment, and holds him as such. Applicant was twenty-one years old. The writ was granted July 18, 1862, and service had upon respondent subsequent to the enrollment of applicant. *Held,* that the restraint of applicant was legal.

The respondent moved a continuance, because the applicant, since he was remanded by the Chief Justice into the custody of the respondent, as a soldier, in the regiment of which he was in command, has deserted, and is no longer in the custody or under the control of the respondent. This motion is based upon an affidavit of a Lieutenant belonging to respondent's regiment; from which it appears that the applicant, after his return to it, was furloughed until the 15th September last; at the expiration of which time, he was ordered to report for duty at Tyler, Smith County, Texas, where the regiment was ordered to rendezvous, but that up to the 25th of September, when affiant left camp, the applicant had not joined the regiment or been heard of by him. The motion was

B

urged upon two grounds: 1st, the Court has no jurisdiction on the application, if the applicant has escaped from the custody to which he was remanded by the judgment from which he appeals; 2d, if the Court has jurisdiction, it will not act upon his appeal while he is at large. *Held*, that this Court has jurisdiction to try the cause on appeal under the circumstances; that the second ground is well taken, as a mere question of practice, if the facts of the case called for its application—but the facts of this case do not call for its application.

The respondent must produce the body of the person alleged to be illegally detained, before the Judge or Court issuing the writ, if in his custody or under his control at the service of the writ, unless excused from so doing by the circumstances indicated in Art. 149, Code Criminal Procedure; and a return not accompanied by the body will be scanned with great caution.

If a party has been released from custody previous to the service of the writ, its object and purpose has been accomplished, and the Court will make no order on the subject.

A different rule prevails when the Court has obtained jurisdiction by service of the writ; when once obtained, it cannot be defeated by the wrongful act of either party.

The object of the writ is to relieve the party from illegal restraint, and not to afford him redress for the illegal restraint.

Upon the hearing of an appeal in cases of Habeas Corpus, the applicant need not be personally present.

The rule of the Court, not to hear appeals in criminal causes when the defendant has escaped, is merely a rule of practice, depending, in its application to particular cases, upon the discretion of the Court.

A party's right to a writ does not depend upon the legality or illegality of his original caption, but upon the legality or illegality of his present detention.

The act of the Confederate Congress, entitled an " act to provide for the public defence," approved April 16th, 1862, commonly known as the " Conscript Law," is constitutional.

It is a general proposition that it is incumbent upon those who maintain the constitutionality of an act of the Confederate Government, to show that the authority assumed by the Confederate States, is sanctioned by an expressly delegated power, or that the act itself is necessary and proper for the carrying into effect an expressly delegated power.

In determining the constitutionality of a law passed by the Confederate government, it is important to consider whether the act in question is done in the exercise of a power expressly granted, or under the implied powers granted by the 18th paragraph of the 8th section of the 1st article of the Constitution: if it is the first, then the Confederate Government may use its discretion in the mode and manner of its exercise, unless it is limited or restrained in so doing by some other express provision, or by some clear and necessary implication; and the burthen of showing this is upon those who assert the limitation.

The authority given " to make all laws which shall be necessary and proper for carrying into execution " the expressly granted powers, was not intended merely to authorize Congress to exercise by legislation the powers previously granted; its right to do so depends in no manner upon this clause, but it is itself a direct grant of all such subsidiary and incidental powers as shall be " necessary and proper" to carry into effect the previously granted powers; and it is incumbent upon those who maintain it, to show not merely that it is a " necessary" law, but that it is a " necessary and proper" law for carrying into effect the expressly granted power.

If there were no express grant " to raise and support armies," the right of the Confederate Government to raise and support armies could be sustained under the general granting clause contained in the 18th paragraph, 8th section,

article I, of the Constitution; and the law in question is in strict accordance with it.

The "power to raise and support armies" is an express constitutional grant to the Congress of the Confederate States; and there is no limitation as to the mode or manner of exercising it, by any other express provision or by any necessary implication.

The Conscript Law does not violate any of the abstract or guaranteed rights of the citizen, nor assume over him any control not delegated by the Constitution.

The grant of the power to make war, carries with it, by necessary implication, unless expressly withheld, the right to demand compulsory military service from the citizen; this express power, together with the implied powers, is vested in the Congress of the Confederate States.

The power to call out the militia, which is a compulsory service, does not limit the power to raise and support armies; nor is the right to raise and support armies to be taken in subordination to the power conferred over the militia.

The general government is not dependent upon the will either of the citizen or of the State, to carry into effect the power to raise and support armies.

While both the Confederate Government and the State Government possess some of the powers which are called by law-writers in distinguishing different forms of government, "sovereign powers," neither of them are themselves sovereign, but each of them represents the sovereign, and both have within their mutual spheres of action, just such powers and functions as have been conferred upon them by the Constitutions creating them.

Congress can exercise, in its judgment and discretion, the "power to raise and support armies," to the extent of raising and supporting such armies as are absolutely essential to enable it to carry into effect the powers granted to it; beyond this Congress cannot go; so long as the necessity exists, the exercise of the power is constitutional; when the necessity ceases to exist, its continuance would be unconstitutional.

Appeal from the Judgment of Hon. ROYAL T. WHEELER, Chief Justice of the Supreme Court, sitting in Chambers, at Austin.

*Hancock & Paschal*, for appellant.

*Attorney General*, for appellee.

MOORE, J.—Delivered the opinion of the Court, and cited the following authorities, to wit: Hurd. on Habeas Corpus, 256, 244, 294; Commonwealth vs. Chandler, 11 Mass., 83; U. States vs. Davis, 5 Cr., C. C. Rep., 622. Dews' Case, 18 Penn., 37; Rex vs. Gordon, 1 Barn, and Ala., 572, n; 4 Elliott's Debates, 459; 7 vol. Niles' Register, p. 137–294; ib. vol. 8, p. 281.

BELL, J.—*Concurred* in the opinion of the Court, upon the questions of practice; but *dissented* as to the constitutionality of the Conscript Law; and delivered a dissenting opinion.

WHEELER, C. J.—Delivered a separate opinion, concurring in the opinion as delivered by Justice MOORE.

Judgment affirmed.