No. 751.—SUCCESSION OF EDWARD SIMON, SR.—Opposition of ABAT et als. to Tableau of Distribution and Classification.

The recording of the certificate of the notary who drew the act of mortgage, in the office of the recorder of mortgages of the parish where the property is situated, is not sufficient to give effect to the mortgage as against third persons. C. C. 3336; acts of 1855, No. 274, p. 335.

A certified copy of the act of mortgage must itself be placed of record in the parish where the property is situated to give it effect. This rule does not apply to the parish of Orleans, the registry of mortgages in this parish being governed by special laws on the subject. Acts of 1855, No. 285.

APPEAL from the Third Judicial District Court, parish of St. Martin. *E. Monge*, attorney at law, Judge *ad hoc*. *Fenlin Voorhies*, for opponents and appellants. *Jos. A. Breaux* and *A. C. Dumartrait*, for appellees.

LUDELING, C. J. The administrator of the succession having filed his account and tableaux of distribution, Valcourt Abat and others opposed the claim of Lobit, Charpentier & Co., on the grounds that the mortgage in their favor was never legally registered; that they are not creditors for the amount placed on the tableau, and that the drafts of the deceased were paid by Lobit, Charpentier & Co. in Confederate currency.

There was judgment dismissing the opposition, and the opponents have appealed.

It appears that in 1861, Lobit, Charpentier & Co. made advances to Edward Simon, Sr., and to secure the payment of the sums advanced, said Simon specially mortgaged certain property situated in the parish of St. Martin, by an act passed before Selim Magner, a notary public in the city of New Orleans, and that in lieu of the act of mortgage, a certificate of said Selim Magner was registered in the recorder's office of the parish of St. Martin, which certificate stated that on the eighth day of February, 1861, Edward Simon, of the parish of St. Martin, in this State, had mortgaged in favor of Lobit, Charpentier & Co., of New Orleans, "a plantation or tract of land situated in the parish of St. Martin, at the distance of about two miles from Breaux's Bridge, containing ten arpents in front on the east side of the river Teche, by eighty arpents in depth, bounded above by a tract of land formerly belonging to Raphael Cormier, and below by a tract formerly belonging to Widow Alexander Guilbeau, which plantation is the same formerly owned by David Rees, and also the other property and slaves fully described and named in said act," etc. Then follow the names of the slaves, which the notary certifies were mortgaged, "together with a certain plantation and certain lands fully described in said act of mortgage." And the notary further certifies what debts the said mortgage was given to secure.

This is the only registry of the mortgage made in the parish where the property mortgaged was situated.

The syndic of Lobit, Charpentier & Co., and the administrator of the succession, contend that this is a sufficient registry to affect the rights of third persons.

We think otherwise. Article 3342 declares that "conventional mortgage is acquired only by consent of the parties; and judicial and legal mortgages only by the effect of a judgment or by operation of law. But these mortgages are only allowed to prejudice third persons when they have been publicly inscribed on the records kept for that purpose, and in the manner hereinafter directed." Article 3345 declares all mortgages are "required to be recorded in the manner hereafter provided." And article 3336 declares that "to obtain an inscription of a public act, or judgment, the creditor, either in person or by an agent, shall present an authentic copy of the act or judgment to be recorded, to the register of mortgages of the place where the inscription is to be made." And the statute of 1855, No. 274, section 1, declares that "no notarial act, concerning immovable property, shall have any effect against third persons, until the same shall have been recorded in the office of the parish recorder where such immovable is situated," and section 2 declares "all sales, contracts and judgments which shall not be so recorded shall be utterly null and void, except between the parties thereto," etc. P. 335. It seems clear, therefore,

that the public act creating the conventional mortgage and the judgment from which spring the judicial mortgage, must be registered in the manner indicated by the law maker, in order to affect the rights of third parties. So far as third persons are concerned, it is the registry alone which gives validity to the conventional and judicial mortgages alike. Article 3366 provides the same mode for effecting the inscription of both. If the registry of a certificate of the notary as to the contents of an act of mortgage be sufficient to affect third persons, why may not a clerk's certificate as to the substance of a judgment be substituted in lieu of the judgment for registry also?

Mortgages, like privileges, are the creatures of the law, so far as third persons are concerned, and creditors who claim a preference over other creditors must comply strictly with the law, which confers this preference only on condition that its terms are observed. 4 Rob. p. 7, case of Falconer; 21 An. 427; 22 An. 402.

The law relied on by the syndic and administrator, No. 285 of the session acts of 1855, relates only to the parish of Orleans, and is wholly inapplicable to a case like this.

It is therefore ordered and adjudged that the judgment of the lower court, dismissing the opposition, be avoided and reversed, and that there be judgment amending the tableau in such a manner as to give a preference to the judicial mortgage of the opponents over the claim of Lobit, Charpentier & Co., and that in other respects the judgment be affirmed. It is further ordered that the costs of this appeal be paid by the appellees.