No. 2225.<br>Second Circuit Appeal.

JOHN C. CHARRIER v. GREENLAW TRUCK & TRACTOR COMPANY, INC.,<br>and<br>FELIX E. BORDELON v. GREENLAW TRUCK & TRACTOR COMPANY, INC.<br>CONSOLIDATED.

(June 13, 1925, Opinion and Decree.)<br>(July 11, 1925, Rehearing Refused.)

(<i>Syllabus by the Editor.</i>)

1. **Louisiana Digest—Chattel Mortgages—Par. 5; Registry—Par. 12.**
Where the chattel mortgage is not actually filed but is recorded and indexed in such a way as not to give the real mortgagor's name, under the provisions of Act 215 of 1910 and Section 4 of the Chattel Mortgage Act, 198 of 1918,

the alleged mortgage cannot operate as a lien nor affect "third persons".

**2. Louisiana Digest—Chattel Mortgages—Par. 1, 5.**

The Legislature in authorizing the mortgaging of chattels intended to make chattel mortgages subject to the general laws, so far as they might be applicable, except where the chattel mortgage law contains provisions evidencing a contrary intent.

**3. Louisiana Digest—Mortgages—Par. 75.**

Under Act 215 of 1910 mortgages are without effect as to third persons until actually inscribed on the records, and when effective because of such inscription, were effective not as written but as recorded.

**4. Louisiana Digest—Chattel Mortgages—Par. 5.**

Under the provisions of Section 4 of Act 198 of 1918 chattel mortgages become effective against all parties from the time the same is filed for recordation.

**5. Louisiana Digest—Chattel Mortgages—Par. 5.**

The recordation referred to in Section 4 of Act 198 of 1918 must mean recordation sufficient to enable the public to ascertain whether the act of mortgage has been recorded. Therefore, an index in the name of another party is insufficient to affect third persons.

**6. Louisiana Digest—Registry—Par. 7, 12.**

The force and effect of the public records must depend on themselves and not on whether parties consult them or not. Public records are binding for what they show and not for what they do not show. Without consultation they are binding for what they show. They should not be binding for what they do not show.

Appeal from Fourteenth Judicial District Court, Parish of Avoyelles. Hon. S. Allen Bordelon, Judge.

This is a consolidation of two suits against the Greenlaw Truck and Tractor Company, in which the plaintiffs claimed ownership of two automobile trucks and enjoin the sheriff from selling them. They also called the clerk and sheriff in warranty.

There was judgment in favor of the plaintiff, Bordelon, and against the plaintiff, Charrier.

From this judgment the plaintiff, Charrier, and the defendant, Greenlaw Truck and Tractor Co., appealed.

Judgment for the plaintiff, Bordelon, affirmed and against the plaintiff, Charrier, reversed. The injunction against the sheriff perpetuated.

Porterie & Bordelon, of Marksville, attorneys for plaintiff, appellant, John C. Charrier.

W. E. Couvillion and Couvillion & Bordelon, of Marksville, attorneys for defendant, appellee.

CARVER, J. On March 17, 1923, Greenlaw Truck & Tractor Company, Inc., sold to Charles F. O'Rourke a Federal truck on terms of part cash and part credit, taking notes for the credit part, secured by vendor's privilege on that truck and also by a chattel mortgage on both that truck and a Huffman truck already belonging to O'Rourke.

The act acknowledging the vendor's privilege and granting the chattel mortgage was passed before Harry E. McEnerny, a Notary Public in and for Orleans parish, and two witnesses, and was duly recorded, in that parish.

It contained the non-alienation clause.

O'Rourke having removed the trucks to Avoyelles parish, the Greenlaw company sent a certified copy of the act to the Clerk of the District Court and ex-officio Recorder of that parish to be recorded.

This copy was not marked filed, but an unsigned notation was made by a deputy clerk on the foot of it reading as follows:

"Reed Book 1 folio 300 in Avoyelles parish records."

The clerk keeps, as required by the chattel mortgage law, a chattel mortgage book

ruled off into columns with headings as follows:

"Number"

"Date & time filed Month Day Year Hour"

"Mortagor"

"Mortagee"

"Date of Instrument Month Day Year"

"Amount Secured"

"When due Month Day Year"

"Description".

In this book, under date of March 21, 1923, the act in question was recorded by writing in the respective columns the appropriate details of the act, all being correctly done except that in the column headed "Mortagor" the name of the notary, McEnerny, was written instead of O'Rourke's name.

The clerk also keeps an index to chattel mortgages in which the act was indexed as a mortgage from McEnerny to the Greenlaw company.

He also keeps a book in which he notes in chronological order all instruments filed for record.

In this book, too, the act was noted as a mortgage from McEnerny to the Greenlaw company.

On October 20, 1923, the sheriff of Avoyelles parish sold both trucks under a writ of fieri facias issued on a judgment duly rendered against O'Rourke in the suit of Voorhies Moreau against him.

The sheriff did not obtain or ask for a certificate of mortgages and, of course, did not read such a certificate.

At this sale John C. Charrier bought the Huffman truck for $300.00 and Felix E. Bordelon bought the Federal truck for $100.00. They paid these amounts to the sheriff and took possession of their respective trucks.

The price of the trucks, after paying Moreau's debt and costs, left a considerable surplus, which was paid to O'Rourke's wife,

whose right or authority to receive it is not questioned.

On January 5, 1924, the Greenlaw company sued out a writ of seizure and sale to enforce payment of a balance due on its mortgage debt, and thereunder the sheriff seized the trucks in possession of Charrier and Bordelon.

Thereupon they filed the present suits, claiming ownership of the trucks and enjoining the sheriff from selling them.

They also called the clerk and sheriff in warranty, alleging liability on the part of those officers for their damages in case they lost the trucks, the former because of the erroneous registry of the mortgage and the latter because of his failure to procure and read a mortgage certificate.

In view of the conclusion at which we have arrived, it is not necessary to state the defenses made by these officers.

The Greenlaw company answered asserting its right to pursue the mortgaged property in plaintiff's hands by virtue of the non-alienation clause in its mortgage, the registry of which, they claim, was sufficient, and alleging the nullity of the sheriff's sale because of his failure to read a mortgage certificate.

The district judge maintained Bordelon's claim, but rejected Charrier's. We are informed that his reason for thus distinguishing was that Bordelon had the records examined by an attorney, who reported the trucks free of encumbrances, whereas Charrier bought without examination

OPINION.

We think the failure of the sheriff to read the mortgage certificate was, under the circumstances of this case, immaterial.

If the Greenlaw mortgage was effective as to third persons, the sheriff's sale would

offer no obstacle to its enforcement because it carried the non-alienation clause. If it was not so effective, then the purchases made by Bordelon and Charrier gave them a good title.

The sheriff's sale, if a nullity, on the ground claimed, was only relatively so and the defendant in execution or his representative ratified it by accepting the surplus.

This, we think, gave it the effect of a conventional sale.

## 2.

The defense chiefly relied on is that such registry as was made of the chattel mortgage was sufficient to preserve the rights of the Greenlaw company which, it is claimed, complied with its full duty by depositing the act for record and was not obliged to see that it was recorded correctly.

Up to the time Act 215 of 1910 was passed, mortgages took effect not from the time of filing but only from the time they were actually inscribed in the mortgage book.

In Slocum vs. Rogillio, 30 La. Ann. 833, the Supreme Court pointed out that the provisions of the Code respecting the registry of mortgages were essentially different from the provisions respecting the registry of conveyances.

As to conveyances, as pointed out in Payne vs. Pavy, 29 La. Ann. 116, the Code, in Articles 2264, 2254 and 2266, expressly provided that they should take effect from the time they were deposited in the proper office and endorsed by the proper officer; whereas, as to mortgages, the Code provided, in Article 3329, that "among creditors the mortgage, whether conventional, legal, or judicial, has force only from the time of recording it in the manner hereafter directed"; in Article 3342 that mortgages are only allowed to prejudice third persons when they have been publicly inscribed in records kept for that purpose and in the manner hereafter directed; in Article 3345 that "all mortgages, whether conventional, legal or judicial, are required to be recorded in the manner hereafter provided"; and in Article 3348 that "any person entitled to a mortgage or privilege on the property of another person must cause the evidence of such mortgage or privilege to be recorded in the mortgage book of the parish where the property is situated".

The court, in the Slocumb case, further said, page 835: "And so it has been often held that the registry of a mortgage in the book of conveyances though in the proper office is insufficient and without effect as to third persons, the only exception being where it appears that only one book of record is kept in which both sales and mortgages are registered indifferently. Robertson vs. Brown, 5 La. Ann. 154; Carpenter vs. Allen, 16 La. Ann. 435; Verges vs. Prejean & Bernard, 24 La. Ann. 78, and authorities cited."

In succession of Falconer, 4. Rob. 5, where a mortgage for $14,715.00 was erroneously recorded as $1415.00, the court held it effective against third persons only for the lesser amount, saying:

"From the foregoing provisions of the law it is clear that it is the enregistering alone, in the manner pointed out by law, which gives effect to a mortgage against third persons. If this be true, it is equally clear that a mortgage can be binding on them only for the amount thus registered.

"As to the argument, that the mortgage was recorded with a reference to the notarial act, by consulting which the error might have been discovered, it is a sufficient answer to say that a conventional mortgage is by law valid as to third persons, not as it has been executed between the parties, but as it stands recorded, notice being of its essence as regards such third persons. It is incumbent on the creditor who claims a preference over

other creditors, to give such notice in the manner prescribed by law. It is in his power to ascertain whether the registry of his mortgage has been correctly made. If he fails to do this, he must suffer for the error committed by the recorder, saving his recourse against the latter; but the other creditors are not bound to look beyond the register itself; or beyond the certificate of mortgages which the recording officers are bound to make out and deliver from such register. The law which makes it the duty of a notary who passes an act of sale, and of a sheriff who sells property under seizure, to procure a certificate of mortgages, will be vain, indeed, if the purchaser were bound, at his peril, to look beyond such certificate, lest the recorder might have committed some error. Such a construction would, at once, destroy the value and usefulness of our registry laws, by introducing into all transactions concerning immovable property the utmost danger and insecurity. 4 Troplong, Priv. et Hypoth. p. 356, No. 1002, Civ. Code, Art. 3357; McCarty vs. Bond's Admr., 9 La. 354."

In White vs. Bank, 6 La. Ann. 162, a credit sale was deposited in the recorder's office and recorded in the conveyance book and not in the mortgage book. The syllabus reads:

"The vendor of an immovable or slave only preserves his privilege on the object sold when he has caused his act of sale to be duly recorded in the office for recording mortgages. C. C. 3238. This requisition of the law is not dispensed with by proving that the person contesting the privilege had notice of the sale.

"It is not sufficient for a person holding a mortgage or privilege to deposit the acts to be recorded with the recorder of mortgages; he must see that they are recorded; otherwise the mortgage or privilege will not avail against innocent third persons."

Baker vs. Lee, 49 La. Ann. 878, 21 South. 588, decided in 1897, is to the same effect:

In Ellis vs. Simms, 2 La. Ann. 251, a credit sale from Presler to Sims & Brown with reservation of a vendor's privilege to secure the balance, was filed with the parish judge, who was recorder of both sales and mortgages, and was recorded in full in the conveyance book but in the mortgage book was not recorded in full. The recorder, instead, entering it as follows:

"Sims & Brown to Amelia Presler et al., who declared and said that, for the consideration of $16,000, to them secured to be paid by the three joint and several promissory notes of John C. Sims and Joseph Brown, the former of the said parish and state, and the latter residing in Wilkinson county, state aforesaid, the said three notes payable to the order of the said Amelia Presler, and the said children of Simon Presler, deceased; the first for the sum of five thousand three hundred and thirty-three dollars and thirty-three and one-third cents, of even date herewith, and payable on the first day of August, 1841; the second for the same amount and of the same date, and payable on the first day of August, 1842; and the third and last of said notes for the same sum, ($5,333.33 1-3), and of the date aforesaid, payable on the first day of August, 1843; said notes are made payable at the Merchants Bank, New Orleans, and are by me, the Notary, paraphed ne varietur, in order to identify them with this act.

"Recorded, 12 Feb'y, 1841.

"Attest:                         James Dunlap,
                                  "Parish Judge."

The parish judge kept an index of the mortgage book in which he indexed the transaction as follows:

"Sims & Brown to Amelia Presler, mortgage clause, page 158."

The court held that the registry was not sufficient to preserve the Presler privilege against third persons, saying:

"For the validity of the Presler claim of privilege as against the plaintiffs, against whom actual notice is not proved, it was necessary that it should be registered in the mortgage book kept by the parish judge. The registry as there made was a mere extract from the act of sale, not designating in any manner the property sold, and from which not even the nature of the property, whether land, slaves, or

movables, could be ascertained. It was clearly insufficient, and is not aided by the fact that the notarial sale was recorded in the book of conveyances. See Civil Code, Arts. 3349, 3350, 3351, 3353, 3356, 3238, 3241; and also the case of Falconer, 4 Rob. p. 5."

In Ford vs. Tilden, 7 La. Ann. 533, a judgment was obtained by Brown against Griffin, Cotton, R. A. Hunter, Ford and Solibellas. It was registered thus:

"John Brown vs. Spencer Griffin et al., Sixth District Court."

The judgment did not show on its face that it was against Hunter, but by reference to the petition in the suit it could have been ascertained that it was against him as well as the others.

In the index, under the letter "H", was entered:

"R. A. Hunter, administrator J. Brown, page 138" (this probably means "R. A. Hunter adversus J. Brown").

The court held that the registry did not operate as mortgage on Hunter's property because on the face of the inscription Hunter's name did not appear.

It further held that the index was not part of the registry, and that although Hunter's name did appear therein with reference to the particular inscription in question, yet an error in the registry itself was not remedied thereby.

It further says:

"We are not aware that we have ever sustained an inscription, which was not in itself substantially complete; and we fear, that if we should depart from a reasonable exactness in such matters, and permit defective inscriptions to be eked out by evidence aliunde, the salutory law of registry would soon lapse into uncertainty and confusion."

In Taylor vs. Ealer, 22 La. Ann. 279, the court copied and approved the last above quotation.

In Succession of Simon, 23 La. Ann. 533, the court held it insufficient as to third persons to record a certificate certifying to the details of a mortgage, holding that the mortgage itself should be recorded, and saying:

"Mortgages, like privileges, are the creatures of the law, so far as third persons are concerned, and creditors who claim a preference over other creditors must comply strictly with the law, which confers this preference only on condition that its terms are observed." Succession of Falconer, 4 Rob. 7; Harang, Hauck vs. Plattsmier, 21 La. Ann. 427; Rochereau vs. Dupasseur, 22 La. Ann. 402.

Under these authorities it is clear that prior to Act 215 of 1910 mortgages were without effect as to third persons until actually inscribed on the records and when effective because of such inscription, were effective not as written but as recorded.

Defendant claims, though, that conveyances were effective from the time of filing, whether actually recorded or not, and that Act 215 of 1910 places mortgages on the same footing as sales in that respect.

When this act was passed there was no law in Louisiana authorizing the mortgaging of movable property, the first chattel mortgage act having been passed in 1912.

We think, though, that the legislature in authorizing the mortgaging of chattels intended to make chattel mortgages subject to the general laws regarding mortgages, so far as they might be applicable, except where the chattel mortgage law contained provisions evidencing a contrary intent.

We, therefore, take it that Act 210 of 1910 is to be regarded as applying to chattel mortgages as well as to real estate mortgages.

That act provides, in section 1:

"That all acts or instruments of writing which import mortgage or privilege shall when deposited with the recorder of mortgages for record be immediately endorsed by him with the date, hour and

minute of filing; which endorsement shall be recorded with the registry of such instrument."

And in section 2:

"That all such instruments shall be effective against all persons from the time of their filing."

And in section 3:

"That all laws or parts of laws in conflict herewith be, and the same are hereby repealed."

In Payne vs. Pavy, 29 La. Ann. 116, it appears that Pavy bought certain land in January, 1872, receiving a deed therefor which was deposited for record in the recorder's office of Avoyelles parish, where the land was situated, on February 8, 1872, and was endorsed and filed the same day by the recorder, who testified at the trial and swore that the endorsement was correct and that the act was deposited and filed in his office on the day named in the endorsement.

It further appeared that Pavie moved on and went into possession of the property bought at the time of the sale in January, 1872, and continued to possess and live on it thereafter up to the time of the trial, but that the act of sale, though deposited and filed for record on February 8, 1872, was not actually inscribed in the conveyance book until September 18, 1876.

After the act was filed but before it was actually recorded, plaintiff obtained and recorded in the mortgage book a judgment against Pavie's vendor and brought an hypothecary action against Pavie to enforce the judicial mortgage arising, as he claimed, from the registry of his judgment.

The court held that Pavie's sale, having been deposited and filed for record, was effective against third persons, notwithstanding it had not actually been recorded. It says:

"The laws of registry are arbitrary, and often operate constructive notice when there is no actual notice. In other states actual notice supplies the place of registry. This equitable doctrine is held not to prevail in Louisiana. In many cases of much greater hardship than the present, this court has considered itself bound to refuse relief because *ita lex scripta est.*"

It cites Articles 2264, 2254 and 2266 of the Civil Code.

It is to be noted that in this case no claim was made that the judgment creditor had extended credit to Pavie's vendor on the faith of his apparent record title, and it seems also that the court attached some importance to the fact that Pavie had taken possession of the property; though the decision is not placed on either one of these grounds but squarely on the ground that the articles of the Code mentioned make conveyances effective against third persons from the date of their being deposited in the office of the recorder of the parish and endorsed by him.

Way vs. Levy, 41 La. Ann. 447, 6 South. 661, was a contest between a creditor holding a legal mortgage duly recorded and a vendor asserting a vendor's privilege subsequently recorded. To preserve the vendor's privilege against anterior mortgages the law at that time required that it be recorded on the day the act of sale was passed.

See Civil Code, 3274, and its provisions to the amendment by Act 45 of 1877.

The act of sale was deposited with the recorder on the day it was passed and a short time before the time to close his office on a Saturday evening, and was duly filed and endorsed by him on that day. It was recorded that evening in the conveyance book but not recorded

in the mortgage book until the following Monday. The court reviewed all the jurisprudence and held the registry sufficiently timely to preserve the vendor's privilege against anterior mortgages.

Schneidau vs. New Orleans Land Co., 132 La. 264, 61 South. 225, was a petitory action brought by Schneidau to recover a tract of land in the possession of the defendant, Schneidau having bought it from the heirs of Texier, who bought it from William S. Benedict. Defendant had acquired the property from the New Orleans and Western Railroad Company, which bought it from John Spansel, who bought it from William S. Benedict and Percy Benedict by a sale subsequent in time and registry to the sale from William S. Benedict to Texier. The sale from the two Benedicts to Spansel was passed before a notary public in and for Orleans parish, and two witnesses and in this sale the heirs of Texier intervened, renouncing their claims in favor of Spansel. Notaries in New Orleans are not required to deposit their acts of sale with the recorder of conveyances but are required or permitted to keep them in their own archives, and to deliver for registry to the recorder of conveyances instead a certificate showing the date of the act, the place where passed, name, surname and qualities of the contracting parties, description of the property conveyed, and price and terms of sale. Civil Code, 2259.

The notary who passed the act from the Benedicts to Spansel deposited it temporarily with the registrar of conveyances for recordation. The registrar did not record the act in full but recorded instead the following:

"William S. Benedict and Percy S. Benedict sold unto John Spansel a certain lot of ground or tract of land, with all the rights, etc., fronting on the Bayou St. John, in this parish, and running back to the property of the New Orleans Canal and Banking Company, measuring 3 arpents front on said Bayou St. John by a depth of 45 arpents, and 41 arpents on the line separating it from property belonging to Mr. Gordon, and 45 arpents and 162 feet on the other side line, separating it from the property lately belonging to Mr. McDonough, the whole, as per plan drawn by C. A. DeArmas, on February 22, 1850, acquired January 3, 1871, C. O. B. 365; also acquired at tax sale March 19, 1894; C. O. B. 153, fol. 252. This sale is made for $3000 cash. Registered June 19, 1895."

It will be observed that this registry made no mention of the intervention of the Texier heirs. It seems that the act was not indexed either as a sale or renunciation by them. On the original hearing, the court reviewed the jurisprudence at great length and held that, as to the renunciation by the Texiers, it did not constitute a registry and that their renunciation was, therefore, ineffective as to Schneidau, and rendered judgment in his favor. On rehearing, though, this judgment was reversed, the court holding that the act from the Benedicts to Spansel, having been deposited for registry in the proper manner and endorsed by the proper officer, was effective against all persons, notwithstanding it was recorded in such a way as to give no notice of the Texiers' renunciation.

Washington Bank and Trust Co. vs. Cowan-Kerr Lumber Co., 155 La. 1076, 99 South. 881, was a contest between the plaintiff holding a chattel mortgage given by defendant on certain sawmill machinery and other property, and the intervenors claiming under a contract with the defendant antedating the plaintiff's chattel mortgage by about two years. This contract was recorded in the conveyance book prior to plaintiff's mortgage but was not recorded in the mortgage book. In a previous litigation between intervenors and defendant intervenors had sought to enforce this

contract as a conveyance. The Supreme Court held against them on this issue but decided that the contract gave intervenors a lien and privilege on the property, in effect holding it valid as a mortgage on the property, which was the same as that mortgaged to the bank. The court held in the contest between the bank and intervenors that, although recorded in the conveyance book prior to the registry of the bank's mortgage, it was ineffective against the bank because not recorded in the mortgage book. Of course, having been recorded in the conveyance book, it necessarily must have been deposited with the recorder and presumably was endorsed by him. This case went up from the parish of St. Tammany in which the clerk of the District Court is register of both mortgages and conveyances. The case was decided in 1924 and the contract in question was made in 1917, nearly seven years after Act 215 of 1910 was passed. However, the court does not refer to that act in the decision.

Godchaux Sugars, Inc., vs. Leon Boudreaux & Bros., 153 La. 685, 96 South. 532, was a contest between three judgment creditors of Boudreaux whose judgments were rendered seriatim by default at motion hour on the same day in the District Court of St. Charles parish, and subsequently recorded on the same day in the mortgage records of that parish; the judgment in favor of McCloskey Brothers being inscribed first, that in favor of Kohlman second, and that in favor of Godchaux Sugars, Inc., third, but each immediately following the other. McCloskey and Kohlman contended that as their judgments were rendered, signed and entered upon the minutes of the court and were actually filed with the recorder and by him inscribed in the mortgage book prior to the judgment in favor of Godchaux Sugars, Inc., they should be paid by preference over that company. The Godchaux Company contended that the three judgments should be treated as having been rendered, signed and entered, filed and inscribed simultaneously and, accordingly, should be ranked concurrently. The district judge decided that the judgments should be paid in the order of their recordation in the mortgage book. The Supreme Court held that the law governing the issue was Act 215 of 1910, stating:

"It is apparent from a mere reading of the statute that it is not from the date of recording, but from the time of filing, that the instrument becomes effective against third persons."

It reversed the district judge, though, and held the judgments concurrent in rank on the ground that the proof failed to show which one was actually filed first with the recorder. The evidence did show that the judgments of McCloskey and Kohlman were rendered immediately prior to the judgment of the Godchaux Company, and that the attorney of McCloskey and Kohlman, whose name was probably Dinkelspiel, requested the clerk to record the judgments in the order in which they were rendered ahead of the judgment in favor of the Godchaux Company, whose attorney's name was probably Milling, but may have been Godchaux or Saal, which request was made in the court-room but afterwards complied with by the clerk. The court held, however, that the evidence did not show which of the judgments was signed first or delivered to the clerk first, nor which was the first to receive the imprint of the filing mark in the clerk's office. The court referred to the case of White vs. Bank, supra, mentioning its having been cited with approval in Ford vs. Brooks, 35 La. Ann. 151, and.

Grunow vs. Menge, 36 La. Ann. 927, pointing out that in the White case the court had under consideration a law under which the "recording" operated against third persons, while in the instant case it was the "filing" which made it operative against the world, and stated that the filing was an accomplished fact when the "date, hour and minute of filing" is endorsed on the instrument.

The court did not hold, but it certainly strongly intimated, that if the evidence had shown which judgment was filed first in the clerk's office it would have given that judgment priority over the others. In our opinion, though, the case is not quite so authoritative in support of that view as if the court had actually given priority to one of them on the sole ground that it was filed a minute or so before the others, when all three of them were rendered and filed as simultaneously as was possible for three things to be done which had to be done by the same parties. One had to precede the other in the nature of things and the one actually preceding in point of rendition and signing probably owed its advantage to some accidental circumstance, such as the fact that the call for motions was in alphabetical order, and the attorney procuring it had a surname beginning with a letter of the alphabet preceding the first letter in the surnames of the attorneys procuring the other judgments. On Attorney Dinkelspiel's name being called, he presents his judgment for signature and as soon as it is signed if he rushes downstairs and files it in the clerk's office he will naturally get it there a minute or so ahead of Attorney Milling, who must wait until his name is reached before his judgment can be handed up. Even if the three judgments are handed to the recorder at the same time he must needs mark one filed before he marks the others filed. We are not sure that the Supreme Court would construe the act as intending to give either precedence over the other in such a close race.

The view is pressed on us by defendant's able counsel that the registry laws are arbitrary, that they must be enforced as written and without regard to considerations of equity. They are in a sense arbitrary, but in our opinion no more so than other laws; they are subject to the ordinary rules of construction. The direction in Article 13 of the Civil Code that where the law is clear and free from ambiguity the letter of it is not to be disregarded under the pretext of pursuing its spirit, is applicable not only to the laws of registry but to all other laws.

Article 10 provides:

"The universal and most effectual way of discovering the true meaning of a law, when its expressions are dubious, is by considering the reason and spirit of it, or the cause which induced the Legislature to enact it."

Article 17 provides:

"Laws in *pari materia*, or upon the same subject matter, must be construed with reference to each other; what is clear in one statute may be called in aid to explain what is doubtful in another."

In our opinion Act 215 of 1910 is one of a system of laws, the purpose of which is to provide a means whereby anyone interested in a particular piece of property subject to the system can and should show its title and mortgage condition on the public records and whereby anyone intending to become interested in it can ascertain that condition from the records; whether this latter consults it or not, he is bound by it on the one hand and can rely on it on the other.

In view of this purpose, can we say that a mortgagee is under no obligation

to do more than deposit his mortgage with the proper officer, and that by merely doing so he preserves his right, although that officer may fail to record it or may record it in such a way as to give false and misleading information instead of true information?

It is true the law declares that the act shall take effect from the time it is filed, but it says this in contemplation of obedience to its direction that the act shall be recorded, of course meaning that it shall be recorded correctly.

Can the mortgagee claim the benefit of the declaration without seeing that the direction is obeyed?

Counsel for the Greenlaw Company says yes, because the direction is given not to the mortgagee but to the recorder, over whom the mortgagee has no control.

Civil Code, 3342, speaking of conventional, judicial and legal mortgages, says:

"But these mortgages are only allowed to prejudice third persons when they have been publicly inscribed on records kept for that purpose and in the manner hereafter directed."

Article 3345 provides:

"All mortgages, whether conventional, legal or judicial, are required to be recorded in the manner hereafter provided."

Article 3346:

"The inscription of mortgages only binds the property of the debtor when it has been made in the office of mortgages for the parish where the property lies.

"If the debtor has immovable property lying in more than one parish, the inscription ought to be made in the office of mortgages for each of them."

Article 3347:

"No mortgage or privilege shall hereafter affect third parties unless recorded in the parish where the property to be affected is situated."

Article 3348:

"Any person entitled to a mortgage or privilege on the property of another person must cause the evidence of such mortgage or privilege to be recorded in the mortgage book of the parish where the property is situated."

The pertinent parts of the chattel mortgage law, Act 198 of 1918, are as follows:

"Section 2. Be it further enacted, etc., That every such mortgage of property mentioned in Section 1 shall be in writing, setting out a full description of said property to be mortgaged, so that same may be identified, and also stating definitely the time when the obligation shall mature. In order to affect third persons without notice, said instrument must be passed by notarial act and the original or a certified copy thereof shall be recorded in the office of the Recorder of Mortgages in the parish where the property shall then be situated, and also in the parish in which the mortgagor is a resident.

"Section 3. Be it further enacted, etc., That upon the receipt of such instrument the recorder shall note thereon the date, hour and minute of receiving same; and he shall record it in his office. It shall be further the duty of the recorder to cause to be endorsed on the said instrument his certificate of recordation. For these services he shall receive fifty cents.

"Section 4. Be it further enacted, etc., That every mortgage shall be a lien on the property mortgaged from the time same is filed for recordation, which filing shall be notice to all parties of the existence of such mortgage, and said lien shall be superior in rank to any privilege or lien arising subsequently thereto.

"Section 5. Be it further enacted, etc., That the mortgagor shall not move the property mortgaged from the parish where said mortgage is given without the written consent of the mortgagee, designating the parish or parishes to which same may be taken, and to preserve such mortgage against third persons in such cases it shall be the duty of the mortgagee to have a copy thereof recorded in the parish or parishes to which said removal is permitted. * * *

"Section 6. Be it further enacted, etc., * * * an index to the Chattel Mortgage

Book shall be kept in the same manner as required for other records."

It will be observed from the foregoing that, taking the law according to its mere letter, registry in the parish of first instance is made effective against all parties "from the time same is filed for recordation." See Section 4. But as to registry in the parish to which the mortgaged property is removed, the language is, see Section 5: "To preserve such mortgage against third persons in such cases it shall be the duty of the mortgagee to have a copy thereof recorded in the parish or parishes to which said removal is permitted."

It might be contended under this language that, while the mortgagee is not obliged to do anything more than deposit the act in the parish of first instance, yet in case of removal it is his duty not only to deposit it but to have it recorded in the parish to which the property is removed. We do not think, though, that the lawmaker designed to make a difference in this respect, and our opinion is that if mere depositing is sufficient in the original parish it is also sufficient in the other parish.

In respect of sales, there is no such provision as to the mortgagee having the mortgage recorded as it is found in Section 5 of this Act and Article 3348 of the Civil Code. It may be the lawmaker intended, as was held in the Payne and Schneidau cases, that a purchaser was safe when his deed was deposited for record and was properly endorsed, and was under no obligation to see that it was actually recorded or recorded correctly. If so, perhaps the reason was that a purchaser is supposed to take possession, pay taxes and exercise such other acts of dominion as would put the public on notice. Unless a mortgage, though, is actually recorded, there is nothing to put the public on notice, and unless recorded correctly the notice is misleading.

In the Payne case the equities were very strong in favor of Payne. Cases can easily be conceived of where the equities would be on the other side and where to apply the maxim *ita lex scripta est* rigidly would result in great injustice and also absurdity. For instance, if the recorder himself were either purchaser or mortgagee and made the registry in a way to mislead, could anyone claim that he could enforce his deed or mortgage as written instead of as recorded, to the prejudice of one who had dealt on the faith of the record as made?

Or should one, after filing his deed or mortgage, withdraw it before it could be recorded, could he then enforce it at all?

Except for a relatively short period of time, private acts were not required to be kept in the recorder's archives but, after being recorded, could be withdrawn by the purchasers.

In case a party filed his deed or mortgage and the recorder recorded it incorrectly, could the purchaser withdraw it without seeing that the record was corrected, thus depriving the public of all opportunity to discover the error, and then enforce it, not as recorded but as written?

It may be contended that, under the doctrine of the Schneidau case a purchaser could. In that case, it is true, the deed did not remain in the office of the register of conveyances but it did remain in the notary's office, where it was accessible to the public.

Would the same rule apply where the purchaser himself took the deed away?

These are interesting questions, but they do not call for a reply in this case.

We have seen that under the former laws the duty rested on the mortgagee to see that his mortgage was recorded and recorded correctly. Repeals by implication are not favored. The chattel mortgage law, in Section 5, if taken literally, seems to place this duty on the mortgagee anew, at least as to the parish to which the mortgaged property may be removed.

A purchaser or a mortgagee can, with little trouble, ascertain whether his deed or mortgage is recorded and recorded correctly or not. It is impracticable in most cases, and where deeds or mortgages have been withdrawn by the owners, it is impossible for the public to ascertain whether they have been recorded correctly or incorrectly.

In the present case, a searcher would not have found O'Rourke's name on the index and would have had no more reason to examine the original of the act in question than to examine every other original in the office.

Act 76 of 1908 makes indices parts of the official records.

Section 1 of that act provides:

"That Recorders of Mortgages throughout the state shall hereafter keep in their respective offices, as parts of the records thereof, indices, both direct and inverse, to all acts hereafter filed for record in their respective offices; said indices to contain in alphabetical order references to the names of the parties to the acts, to the book, page and year in which said acts are recorded."

Article XIX, Section 19, of the Constitution of 1921 provides:

"No mortgage or privilege on immovable property, or debt for which preference may be granted by law, shall affect third persons unless recorded or registered in the parish where the property is situated, in the manner and within the time prescribed by law."

Article 186 of the Constitution of 1898 was substantially the same. It provides:

"No mortgage or privilege on immovable property shall affect third persons, unless recorded or registered in the parish where the property is situated, in the manner and within the time as is now or may be prescribed by law."

In view of this constitutional provision, the one in effect when Act 215 of 1910 was passed, it is questionable whether the Legislature could validly make mortgages on immovable property effective against third persons merely because filed though not recorded or improperly recorded.

We express no opinion as to this, because the question of constitutionality is not raised and the case does not involve immovable property. We merely advert to it to remark that if possible Act 215 of 1910 should be so construed as not to violate the constitutional provision.

In the Godchaux case, supra, the court said, speaking of that act:

"It is the filing of the document which gives it force and effect against the world, and the filing is an accomplished fact when the date, hour and minute of filing is endorsed on the instrument."

The court cites:

Ford vs. Brooks, 35 La. Ann. 151.

Grunow vs. Menge, 36 La. Ann. 972.

In the Ford case the court cites various authorities as to what constitutes "filing" and says "from the foregoing it clearly results that the filing of a document consists both in the handing of it to the clerk and in the endorsement of it by that officer with the date on which it came into his hands. It is of time immemorial usage that, besides, the clerk or his deputy attests the endorsement under his official signature."

It has been mentioned that the only notation made by the clerk on the instrument in this case was an unsigned notation as follows: "Recd. Book 1, folio 300, in Avoyelles parish records."

We have not been referred to any decision applying the doctrine of the Schneidau case to mortgages. If, however, that doctrine is applicable to all mortgages because of Act 215 of 1910 and to chattel mortgages because of the provisions of Section 4 of the Chattel Mortgage Act, 198 of 1918, (namely, "that the mortgage shall be a lien from the time same is filed, which filing shall be notice to all parties"), we think it cannot apply where the mortgage is not actually filed and is recorded and indexed in such a way as not to give the real mortgagor's name.

We express no opinion on the question whether the failure of the clerk to make and sign a notation evidencing the filing with the date, hour and minute thereof would deprive the act of its effect if it were actually recorded and indexed so as to give correct information as to its contents.

Nor do we express any opinion as to whether the act would be effective if the clerk had endorsed it and signed proper notation of filing, although thereafter it was not recorded at all or recorded in a misleading way.

We hold, though, that inasmuch as there is no proper notation of filing and as thereafter the recording and indexing were not such as to give correct information, neither the letter nor the spirit of the law requires us to hold the act effective as to third persons. The letter does not, because the letter says "filing" shall be notice, and there is no filing.

The spirit does not, because the purpose of the registry laws, as said above, is to provide a record showing the title and mortgage condition of property by which the public is bound, on which it is obliged to rely, and on which it should be able safely to rely.

To hold otherwise would be to violate the equitable maxim that where one of two innocent parties must suffer the loss should rather fall on him by whose fault or negligence it happened.

It would also be to defeat instead of to effectuate the purpose of the registry laws, thus violating what the Civil Code declares is the most effectual way of discovering the true meaning of a law, and would convert what the lawmaker designed to be a reliable guide for the most important transactions into a trap not only for the unwary but even for the most prudent and diligent.

We do not think the circumstance that Bordelon consulted the records and Charrier did not, sufficient reason for distinguishing between their claims.

We think the force and effect of the records must depend on themselves and not on whether parties consult them or not. Without consultation they are binding for what they show. They should not be binding for what they do not show.

For these reasons it is decreed that the judgment of the lower court in the case of Felix E. Bordelon vs. Greenlaw Truck and Tractor Company, Inc., be and the same is hereby affirmed; but that in the case of John P. Charrier vs. the same defendant, the judgment of the lower court is reversed and it is decreed that said Charrier have judgment against Greenlaw Truck and Tractor Company, Inc., and the sheriff perpetuating the injunction herein sued out and decreeing Charrier to be the owner of the truck claimed by him in the suit, free from the mortgage asserted by Greenlaw Truck and Tractor Company, Inc.

It is further decreed that Greenlaw Truck and Tractor Company, Inc., pay all costs of both courts.

---

## ON APPLICATION FOR REHEARING.

REYNOLDS. The Greenlaw Truck & Tractor Company asks for a rehearing on the ground that the court erred in finding that the chattel mortgage from Charles F. O'Rourke to Greenlaw Truck & Tractor Company was not actually filed in the clerk's office.

Our finding was erroneous. The testimony of Guy Roy and C. R. Bordelon establishes the fact that the document referred to was actually filed in the Clerk's office but the same testimony also establishes the fact that the document was endorsed:

"Harry Emmett McEnerny to Greenlaw Truck & Tractor Company".

Such endorsement was not, in our opinion, filing of a chattel mortgage from Charles F. O'Rourke to Greenlaw Truck & Tractor Company.

It is to be borne in mind that it is the filing of the chattel mortgage that is relied on by Greenlaw Truck & Tractor Company as protecting its rights in the premises.

In our opinion a chattel mortgage from Charles F. O'Rourke to Greenlaw Truck & Tractor Company endorsed and filed as from Harry Emmett McEnerny to Greenlaw Truck & Tractor Company is not notice of the filing of a chattel mortgage from Charles F. O'Rourke to Greenlaw Truck & Tractor Company.

John C. Charrier and Felix E. Bordelon bought the two trucks in controversy at sheriff's sale, in good faith, and thereby acquired a good title thereto free of the plaintiff's claim. Before purchasing they examined the public records, or are charged with the responsibility of having done so, to ascertain whether or not there was any chattel mortgage resting on the trucks, and such examination could not have shown a chattel mortgage from Charles F. O'Rourke to Greenlaw Truck & Tractor Company on the trucks.

The Greenlaw Truck & Tractor Company insists in its application for rehearing that the sheriff's sale at which Charrier and Bordelon bought was null for the reason that the sheriff failed to read the mortgage certificates.

As pointed out in our former opinion this omission was only a relative nullity.

In Southern Mut. Ins. Co., vs. Pike, et al., 33 La. Ann. 823, the Supreme Court said:

"The nullity resulting from the sheriff's omission to make the announcement is not absolute, but relative only. It is one susceptible of ratification. It is established not so much for the benefit of prior mortgagees, who, if the sale were legal might be driven to an hypothecary action, as it is in favor of subsequent mortgagees and of the owner himself, who have an interest in having the property to realize as high a price as possible by the granting of facilities to purchasers."

As pointed out in our original opinion, the owner of the trucks, one of those in whose interest more than that of others this law was enacted, had ratified the sale by accepting from the sheriff the balance of the price bid after payment of the debt, interest and costs for which the trucks were sold.